THE STATE EX REL. AMERICAN CENTRAL LIFE INSURANCE COMPANY V. FRANK LANDWEHR, Judge of Circuit Court.—300 S. W. 294.

Court en Banc, November 23, 1927.

*Jones, Hocker, Sullivan & Angert* and *Edward C. Crow* for relator.

*James J. O'Donohoe* for respondent.

BLAIR, J.—Original proceeding in prohibition. Our provisional rule, including an attached copy of the petition theretofore filed, was duly issued and served upon respondent. He has filed a demurrer, thereby confessing the truth of all facts well pleaded in the petition.

From said petition it appears that relator is an insurance corporation organized under the laws of the State of Indiana and duly authorized to do a life insurance business in the State of Missouri. Respondent is the duly elected, qualified and acting judge of Division One of the Circuit Court of the City of St. Louis. Under the provisions of Section 7991, Revised Statutes 1899 (now Sec. 6310, R. S. 1919), relator appointed the Superintendent of the Insurance De-

partment of this State and his successors as its agent upon whom service of process could be had in suits filed against relator in this State.

On September 7, 1926, one Bertha Row instituted an action against relator in the Circuit Court of the City of St. Louis to recover as beneficiary upon a certain policy of life insurance issued by relator upon the life of her husband, Ebbidel Row, who died March 16, 1926. Insured applied for and accepted said policy in the State of Kansas. He resided in Kansas then and at the time of his death. Bertha Row, the beneficiary in said policy, was then and now is a resident of the State of Kansas. On September 9, 1926, service of summons was had in said cause by the Sheriff of Cole County, Missouri, by delivering a true copy thereof, together with the copy of the petition attached thereto, to the Deputy Superintendent of the Insurance Department of Missouri in the absence of the Superintendent.

At the October term, 1926, of the Circuit Court of the City of St. Louis (which was the return term), relator appeared specially and filed its motion to quash and set aside the return of the sheriff to the writ of summons. The motion to quash was thereafter overruled by Judge HALL, who was then the Presiding Judge of Division One. No other ruling by the trial court was proper, in view of controlling decisions of this court hereinafter referred to. Judge LANDWEHR succeeded Judge HALL as judge of Division One, wherein said cause is now pending, and he was made respondent in this proceeding.

The sole question in the case is covered by relator's contention "that Section 6310, Revised Statutes 1919, requiring your petitioner, as a condition of its right to transact business in the State of Missouri, to appoint, by power of attorney, the Superintendent of the Insurance Department of the State of Missouri as its agent for the acceptance of process on its behalf in actions instituted against it in said State, is confined and limited to actions instituted on account of business transacted by your petitioner in the State of Missouri, i. e., to actions on policies issued by your petitioner to citizens and residents of the State of Missouri, and that said statute does not authorize or empower the Superintendent or the Deputy Superintendent of the Insurance Department of the State of Missouri to accept service of process on behalf of your petitioner in actions arising out of business transacted by your petitioner in, and with citizens of, other States or on policies issued by your petitioner to citizens and residents of other States, where, as appears from the averments of the petition filed by the said Bertha Row against your petitioner, as aforesaid, the insured under the policy sued on was, at the time of the application therefor, and at the time of its issuance, and at the time of his death, a citizen and resident of such other State, and was at no time a citizen and resident of the State of Missouri."

In the case of Gold Issue Mining & Milling Company v. Pennsylvania Fire Insurance Company, 267 Mo. 524, 184 S. W. 999, and State ex rel. Pacific Mutual Life Ins. Co. v. Grimm, 239 Mo. 135, 143 S. W. 483, this court ruled adversely to relator's contention. Relator is now earnestly insisting that our former decisions are out of harmony with the rule announced by the United States Supreme Court and well-considered decisions of other States and do not soundly construe our own statute, and asks that we now recede from the rule announced in those cases.

As pointed out by Judge WOODSON in the Gold Issue Mining & Milling Co. case, the first legislation in this State requiring foreign insurance companies doing business in this State to designate agents, upon whom process could be served in this State, occurred in 1845. Section 3 of Chapter 87 of the Revised Statutes for 1845 was as follows:

"The agent or agents of any such company aforesaid, shall also be required, before commencing business, or, in case he or they have already commenced business, then, on or before the first day of July, eighteen hundred and forty-five, to furnish to the clerk of the county court, to be placed on the records of said court, a resolution of the board of directors of the company for which he or they may propose to act, or are already acting, duly authenticated, authorizing any citizen or person residing in the State of Missouri, or elsewhere, having a claim against any such company aforesaid, growing out of a contract of insurance, made with the agent or agents of any such company aforesaid, doing business in this State, to sue for the same in any court in said State having competent jurisdiction; and further authorizing service of process on said agent or agents to be sufficiently binding on said company to abide the issue of said suit, and that such service shall authorize judgments in the same manner that judgments are taken against private individuals; and it is hereby enacted, that the service of process on the said agent or agents, in any action commenced against such company, shall be deemed a service upon the company, and shall authorize the same proceedings as in case of other actions at law; the process shall be served and returned in the same manner, as if the action were against the agent or agents personally."

It will be noted that the designation of agents for the service of process was limited to process in suits instituted by persons "having a claim against any such company aforesaid, growing out of a contract of insurance, made with the agent or agents of any such company aforesaid, doing business in this State."

By the fourth subdivision of Section 1, Chapter 84, of the Revised Statutes of 1855, it was provided that a foreign insurance company, doing business in this State, should file with the county clerk of the county, where it proposed to do business, a resolution "au-

thorizing any person having a claim against such company, growing out of a contract of insurance made in this State, with the agent, or agents, thereof doing business in this State, to sue such company for the same, in any court of this State having competent jurisdiction," etc., and authorizing service upon such agents.

The provisions of the 1845 and the 1855 statutes are practically identical. The latter made it more certain that service upon such companies should be limited to actions brought upon contracts of insurance *made in this State.* The 1845 statutes used the words "made with the agent or agents of any such company aforesaid, doing business in this State," while the 1855 statute used the words "made in this State, with the agent, or agents, thereof doing business in this. State."

Chapter 90, Section 3, subdivision fourth, of the General Statutes of Missouri for 1865, contained exactly the same provisions found in the 1855 statutes quoted above. In view of the provisions of the statutes of 1845, 1855 and 1865, there cannot be the slightest doubt that the legislative policy of the State at that time was to limit actions, which could be brought in this State and in which service could be had upon agents of foreign insurance companies, to those actions which were based upon contracts of insurance made by such companies in this State and to deny the right to bring, and to obtain service in, actions based upon such contracts of such foreign insurance companies made outside of this State.

In 1869 the General Assembly re-wrote the law in respect to life insurance companies. Laws of 1869, Section 31, page 38, provided as follows:

"No such company mentioned in the preceding section, shall transact any such business as aforesaid, by any agent or agents in this State, unless it shall first file with the superintendent of the insurance department a written instrument or power of attorney, duly signed and sealed, authorizing any and every agent that is or may be acting for such company in this State to acknowledge service of process for and in behalf of such company in this State, and consenting that service of process upon any such agent, shall be taken and held as valid as if served upon the company according to the laws of this or any other State; *and that in case any such assurance company shall cease to transact business in this State, any person who has acted as such agent, shall be considered and held as continuing to be agent for such company, for the purposes of process as aforesaid, in any action against the company, upon any policy or liability issued or contracted during the time such company transacted business in this State.*"

There had been no provision in prior statutes in any way similar to that contained in the words we have italicized. Also, for the first time, the right to sue foreign insurance companies doing business in

this State was not expressly limited to actions based upon contracts of insurance made in this State. The words "authorizing any and every agent . . . to acknowledge service of process for and in behalf of such company in this State," without expressly limiting such authority to acknowledging service of process in actions brought upon contracts of insurance made or causes of action otherwise accruing in this State, are broad enough to include every sort of action which could be instituted in this State against any defendant. But the words of Section 31, which we have above italicized, limit and cut down the cases where service may be had upon the agents of foreign insurance companies to those actions which are founded upon policies issued and other liabilities contracted "during the time such company transacted business in this State." It is quite significant that this provision first appeared contemporaneously with language authorizing service on the agent or agents of such companies in cases not growing out of contracts of insurance made in this State.

As the business of foreign insurance companies increased, such companies naturally incurred liabilities in this State other than those growing out of contracts of insurance written here. Such considerations, no doubt, brought about the use of the broad language of the first part of Section 31 of the 1869 Act. The legislative intent to preserve the limitation upon actions, wherein service upon agents of foreign insurance corporations could be had, to those actions and proceedings growing out of contracts of insurance made and liabilities incurred in this State is fairly deducible from the part of said section which we have italicized.

Section 6013, Revised Statutes 1879, carried forward "Laws 1869, p. 38, sec. 31, amended." Quite a change from the 1869 Act is noted. Instead of the language we have quoted from the 1869 Act, Section 6013 provided for the appointment by foreign insurance companies of a single agent for the entire State, "upon whom process may be served for and in behalf of such company, in all proceedings that may be instituted against such company, in any court of this State or in any court of the United States in this State, and consenting that service of process upon any agent or attorney appointed under the provisions of this section, shall be taken and held to be as valid as if served upon the company, according to the laws of this or any other State."

While the words "in all proceedings" are very broad, they really include no sort of action or proceeding not fairly included in the language of the first part of Section 31, page 38, Laws of 1869. Standing alone and without reference to the history of prior legislation upon the subject, those words might well be construed to extend the right to bring suit in this State against, and to obtain service of process upon, foreign insurance companies doing business in this

State, to all actions against such companies, whether based on contracts of insurance made in this State or not, or whether based upon other liabilities incurred within this State or not. But, as in the 1869 Act, a provision was retained which indicates that the General Assembly intended to qualify the words "in all proceedings" and to limit their scope. In the same section (Sec. 6013, R. S. 1879), it was provided that "service of process as aforesaid, issued by any such court, as aforesaid, upon any such attorney appointed by the company, or by the superintendent, as aforesaid, shall be valid and binding and be deemed personal service upon such company, *so long as it shall have any policies or liabilities outstanding in this State,* although such company may have withdrawn, been excluded from, or ceased to do business in this State."

The words which we have italicized strongly evidence the legislative purpose that the designation of agents for the service of process in this State should be for the benefit of those persons doing business with such companies in this State. The italicized words limit or cut down the words "in all proceedings" and constitute an explanation of the sense in which the Legislature used those words. The term "service of process as aforesaid," used in the last excerpt and quoted from Section 6013, clearly refers to process "in all proceedings." We think the meaning intended was to authorize service of process upon the designated agent in actions founded upon insurance policies and other liabilities outstanding in this State so long as such liabilities continue to remain outstanding.

Experience, no doubt, demonstrated the necessity and the wisdom of requiring such insurance companies to submit to service of process in actions based on contracts other than insurance contracts, made by their agents in this State, and upon torts committed by agents of such companies. When the Legislature finally extended the requirement that an agent be designated for service of process to cases other than those based upon contracts of insurance made in this State, it carefully added the contemporaneous provision we have referred to indicating its intent to limit such requirement to actions brought upon policies issued and liabilities contracted in this State. It is fair to assume that, if the Legislature had intended to throw wide open to the citizens of the world the right to bring their foreign causes of action to this State and to sue and to get service upon such foreign insurance companies in this State, it would not have worded its act as it did, but would have used language clearly indicating such intent. Such requirement is not one naturally or reasonably incident to the privilege of doing business in this State.

Section 6013, Revised Statutes 1879, was repealed and a new section of the same number was enacted in lieu thereof by Laws of 1885, page 183. Here, for the first time, the policy of requiring

foreign insurance companies to designate agents of their own choice upon whom service of process could be had was abandoned and provision was made for compulsory designation of the Superintendent of the Insurance Department as agent for the service of process. The 1885 Act was in effect merely an amendment of Section 6013, Revised Statutes 1879, and went no further than to enact the provisions necessary to bring about such change of policy. It provided for the appointment of the Superintendent of the Insurance Department as agent "upon whom process may be served for and in behalf of such company, in all proceedings that may be instituted against such company, in any court of this State or in any court of the United States in this State, and consenting that service of process upon said superintendent shall be taken and held to be as valid as if served upon the company, according to the laws of this or any other State. Service of process as aforesaid, issued by any such court as aforesaid upon the superintendent, shall be valid and binding and be deemed personal service upon such company, so long as it shall have any policies or liabilities outstanding in this State, although such company may have withdrawn, been excluded from, or ceased to do business in this State."

It should be here noted that significance should be attached to a change from the language used in the 1869 Act to the language upon the same subject used in the 1879 revision, in the 1885 Act and in the subsequent revisions of our statutes. In the 1869 Act the authority of the agent was continued "for the purposes of process as aforesaid, in any action against the company, upon any policy or liability issued or contracted during the time such company transacted business in this State." This language would leave it quite doubtful whether a resident beneficiary of a policy written outside this State could maintain an action in this State upon such policy, although the policy was outstanding in this State at the time. That this injustice occurred to the Legislature is reasonably apparent from the language, used in the 1879 and subsequent revisions, that such service upon the agent (or Superintendent of the Insurance Department) should "be deemed personal service upon such company, so long as it shall have any policies or liabilities outstanding in this State." Policies outstanding in this State necessarily include policies written outside of this State which are owned and held by residents of this State at the time suit is instituted thereon.

The 1885 Act was amended in 1889 and was then carried down through the 1889, 1899 and 1909 revisions and appears as Section 6310, Revised Statutes 1919, without further change. The 1889 amendments need not be considered for they do not affect the question now before us.

In the Gold Issue Mining & Milling case, 267 Mo. 524, Judge Woodson stated that it was in 1885 that the language of the law was so changed as to include process "in all proceedings." He overlooked the fact that such change was *in effect* accomplished by the Act of 1869 and that those very words were written into Section 6013, Revised Statutes 1879.

Again, in Judge Woodson's opinion, it is said:

"And the following amendment was added (Laws 1869, page 38, sec. 31, amended) by Section 6013, Revised Statutes 1879:

" 'Service of process as aforesaid issued by any such court, as aforesaid, upon any such attorney appointed by the company or by the superintendent, as aforesaid, shall be valid and binding and be deemed personal service. upon such company so long as it shall have any policies or liabilities outstanding in this State,' etc.

"The latter amendment was designed to limit the time of service of process upon the company *'to such time as it has policies or liabilities outstanding in this State,' etc.*"

It must be admitted that, if the amendment referred to had been made while the right to sue and to procure service upon agents of foreign insurance companies had been expressly limited to actions growing out of contracts of insurance made in this State, such amendment might well be regarded as merely a limitation upon "the time of service of process upon the company." But, when it appears that a provision to the same effect was put in the Act of 1869, at which time language expressly limiting the right to causes of action based upon contracts of insurance made in this State dropped out of the statute, the words used, which were referred to and relied upon in the Gold Issue Mining & Milling case as evidencing an intent merely to limit the time of service of process, take on an entirely different meaning and persuade us that they were used to limit the class of proceedings as well, even though they may also have been intended to limit the time of service of process.

Judge Graves filed a vigorous dissent to the majority opinion in State ex rel. v. Grimm, supra, in which Chief Justice Valliant concurred. When the opinion in the Gold Issue Mining & Milling Company case came down Judge Graves again dissented in a separate opinion. In this opinion Bond and Walker, JJ., concurred. So it appears that the question now before us has seriously vexed and divided this court upon two previous occasions. In this situation, I have given the question most careful consideration and have become thoroughly convinced that the legislative policy in this State from 1845 to the present date has been as follows:

At first, the class of actions in which service of process could be obtained upon foreign insurance companies was expressly limited to actions growing out of contracts of insurance made in this State.

When it was deemed necessary to broaden the class of actions, in which such service of process could be had, to include liabilities contracted in this State other than liabilities upon contracts of insurance made in this State, the Legislature impliedly, if not expressly, limited the class of actions to those growing out of policies issued and liabilities contracted in this State during the time such companies transacted business in this State. When the language used in the first part of the section was still further broadened in the 1879 revision, the Legislature, by a contemporaneous provision, likewise limited the class of actions to those based upon "policies and liabilities outstanding in this State."

The foregoing conclusion, if adopted by my brethren, necessarily results in overruling the Grimm and Gold Issue Mining & Milling Company cases, in so far as those cases deal with the question now before us, and further results in the ruling that, as the contract of insurance sued on by Mrs. Row was not made in Missouri and is not outstanding in Missouri, service of process in her suit upon such contract of insurance, made upon the Superintendent of the Insurance Department, cannot be sustained.

A review of the case law upon this question, which might be found in the decisions of other jurisdictions, would greatly lengthen this opinion without corresponding benefit. The rule in this State must depend upon the proper construction to be given to our own statutes. Relator cites and relies upon the cases of Robert Mitchell Furniture Company v. Selden Breck Const. Co., 257 U. S. 213; Missouri Pacific Railroad Co. v. Clarendon Boat Oar Co., 257 U. S. 533; and National Liberty Ins. Co. v. Trattner, 292 S. W. 677, as supporting its contention here.

Outside of the Grimm and Gold Issue Mining & Milling Co. cases in this State, respondent cites and relies upon Bank Savings Life Insurance Co. v. Wood, 253 Pac. 431; Flinn v. Western Mutual Life Association, 187 Iowa, 507, and 30 A. L. R. note, pages 255 to 292, inclusive. The interested reader will, no doubt, pursue his investigation through such cited cases.

The note to American Law Reports, supra, is a very exhaustive one, but touches the question here only incidentally. It calls attention to the fact that our Gold Issue Mining & Milling Company case does not properly fall within the scope of the annotation. Such scope is expressly limited to "an investigation of the question whether, assuming that the conditions of a valid service are otherwise satisfied, the fact that the cause of action sued upon arose without the state of suit will preclude effective service of process upon an actual agent of a foreign corporation—that is, one deriving his authority to receive process from his relation to the corporation, as distinguished from one whose authority to receive process is derived

solely from a statute relating to a foreign corporation doing business within the State, or an appointment pursuant to such a statute."

Upon the question covered by said annotation, the author finds the great weight of authority to be with rule that "the mere fact that the cause of action arose, or the transactions giving rise to it occurred, beyond the territorial limits of the state of suit, does not prevent effective service of process upon an actual agent of a foreign corporation, if the conditions of service are otherwise satisfied."

The conclusions reached by the courts of the various jurisdictions upon the question investigated in the American Law Reports annotation depend as much upon court decisions independent of statutes as upon statutes in force in such jurisdictions. The conclusion we have reached in the case before us is not controlled by the weight of authority upon the question considered in the American Law Reports annotation, but is reached by what we deem a proper construction and understanding of our own particular statute.

It follows from what we have said that our provisional rule should be made absolute. It is accordingly so ordered. All concur.