S<small>TATE OF</small> M<small>ISSOURI</small> at the relation of T<small>HE</small> P<small>HOENIX</small> M<small>UTUAL</small> L<small>IFE</small> I<small>NSURANCE</small> C<small>OMPANY</small> of Hartford, Connecticut, a Corporation, Petitioner, v. B<small>ROWN</small> H<small>ARRIS</small>, Judge of the Circuit Court of Jackson County.—121 S. W. (2d) 141.

Court en Banc, November 16, 1938.

*William C. Michaels, Charles M. Blackmar* and *Kenneth E. Midgley* for relator; *Albert H. Yost, Benjamin L. Holland* and *Michaels, Blackmar, Newkirk, Eager & Swanson* of counsel.

*Charno & Drummond, John A. McGuire* and *Ira B. Burns* for respondent.

254

ELLISON, J.—Original writ of prohibition to Hon. Brown Harris, Judge of the Jackson County Circuit Court. The sole question involved is the validity of the service of summons in an action brought in respondent's court against the relator, The Phoenix Mutual Life Insurance Co., to recover on two insurance policies. If the service is invalid, respondent has no jurisdiction over the person of the relator-defendant. We issued our provisional rule because the amount involved is nearly $20,000, and the case turns on the construction of the service statutes of this State—a question of great public interest.

The relator is a Connecticut life insurance corporation, duly licensed as such in the State of Missouri. It issued the two policies in Missouri on the life of Robert J. England of Kansas City, Missouri, said policies also providing that if the insured should become totally disabled through sickness or accident he would be paid $70.43 per month under one policy and $35.21 per month under the other. England became insane and thereby permanently incapacitated. His wife, Mary E. England, was appointed his guardian and curatrix. She assigned her causes of action under the two policies to Harry Bernblum, a resident of Connecticut, the State in which the relator is incorporated. Bernblum, as assignee, brought the aforesaid action thereon. During the oral argument here counsel for respondent virtually admitted the purpose of the assignment was to exclude any question of diversity of citizenship and prevent a removal of the case to the Federal Court. Resort to this device seems to be frequent lately. We have several such prohibition proceedings pending here.

Summons was issued and served on the Superintendent of the Insurance Department at the State Capitol, under Section 5894, Revised Statutes 1929 (Mo. Stat. Ann., p. 4495). The relator, appearing specially, moved to quash the summons and return on the ground that the two policies were not "outstanding in this State" within the

requirement of that statute. The motion was overruled by respondent. Thereupon, on relator's application we issued our provisional rule in prohibition. Respondent's return and relator's motion for judgment on the pleadings raise only questions of law turning on the proper construction of said statute and others to be mentioned later.

Section 5894 appears in Article 10, Chapter 37, Revised Statutes 1929 (Mo. Stat. Ann., p. 4492), which contains general provisions applicable to all kinds of insurance companies, life, fire, accident, etc. It provides:

"Any insurance company not incorporated by or organized under the laws of this state, desiring to transact any business by any agent or agents in this state, shall first file with the superintendent of the insurance department a written instrument or power of attorney, duly signed and sealed, appointing and authorizing said superintendent to acknowledge or receive service of process issued from any court of record, justice of the peace, or other inferior court, and upon whom such process may be served for and in behalf of such company, in all proceedings that may be instituted against such company, in any court of this state or in any court of the United States in this state, and consenting that service of process upon said superintendent shall be taken and held to be as valid as if served upon the company, according to the laws of this or any other state: Service of process as aforesaid, issued by any such court, as aforesaid, upon the superintendent, shall be valid and binding, and be deemed personal service upon such company, *so long as it shall have any policies or liabilities outstanding in this state,* although such company may have withdrawn, been excluded from or ceased to do business in this state; . . . and if any such company shall fail, neglect or refuse to appoint and maintain, within the state, an attorney or agent, in the manner hereinbefore described, it shall forfeit the right to do or continue business in this state." (Italics ours.)

Relator contends that a claim under a policy must belong to a *resident* of this State to make the policy "outstanding in this state" within the meaning of the phrase italicized above. And since the plaintiff assignee, Bernblum, is not a resident of Missouri but lives in Connecticut, relator asserts the statute does not apply to his action. The respondent maintains the quoted words cover not only policy claims held by residents but also policies *issued* in Missouri, regardless of where the claimant lives. The two policies in suit were issued in this State and respondent therefore says the statute applies, notwithstanding Bernblum is a nonresident. The section has been construed in three cases decided by this court en banc: State ex rel. Pacific Mutual Life Ins. Co. v. Grimm (1912), 239 Mo. 135, 143 S. W. 483; The Gold Issue Mining & Milling Co. v. Pennsylvania Fire Ins. Co. (1916), 267 Mo. 524, 184 S. W. 999, affirmed in Penna. Fire Ins. Co. v. Gold Issue Mining Co. (1917), 243 U. S. 93, 61 L.

Ed. 610, 37 Sup. Ct. 344; State ex rel. American Central Life Ins. Co. v. Landwehr (1927), 318 Mo. 181, 300 S. W. 294.

The majority opinions in the Pacific Mutual and Gold Issue cases both ruled that under Section 5894, supra, service of process on the Superintendent of the Insurance Department would be valid in *all* suits or proceedings brought in the State or Federal courts in this State against a licensed foreign insurance company, without regard to where the cause of action originated or the residence of the owner. There were dissenting opinions in both cases holding that the statute covers only suits on policies issued or liabilities incurred *in this State*. The United States Supreme Court affirmed the principal opinion in the Gold Issue case holding the statute rationally might bear the construction there put upon it. [Penna. Fire Ins. Co. v. Gold Issue Mining Co., supra, 243 U. S. 93, 61 L. Ed. 610, 37 Sup. Ct. 344.]

Ten years later, in 1927, the question came up again in State ex rel. American Central Life Ins. Co. v. Landwehr, 318 Mo. 181, 300 S. W. 294. In that case the defendant company was licensed in Missouri as a foreign corporation, but the life insurance policy sued on was issued in Kansas, the insured lived and died there and the plaintiff beneficiary was a resident of Kansas. This court en banc unanimously held on those facts that service of summons on the Superintendent of the Insurance Department under Section 5894, supra, was invalid, overruling that far the majority opinions in the Pacific Mutual and Gold Issue cases, supra. But relator and respondent disagree as to what showing the decision requires to make such service valid. As already stated, the relator contends it must appear that the claimant resides in Missouri, whereas the respondent maintains either that showing, *or* proof that the policy was issued in Missouri, is sufficient.

The history of the statute is traced in the American Central opinion, which points out that under Section 3, page 610, Revised Statutes 1845; subdivision 4 of Section 1, page 885, Revised Statutes 1855; and subdivision 4 of Section 3, page 403, Revised Statutes 1865, service of summons was to be made on the authorized agents of foreign insurance companies in suits on claims growing out of *contracts of insurance made in this State*. In the first comprehensive insurance legislation enacted in Missouri, Laws 1869, pages 23-61, two sections of the acts, Section 31, page 38 and Section 25, page 55 (the first dealing with life insurance, and the second with insurance other than life), broadly provided any foreign insurance company desiring to transact business in this State by agents should first file with the Insurance Department a written instrument authorizing such agents *"to acknowledge service of process for and in behalf of such company in this state,"* and further stipulated that if the insurance company ceased to transact business in this State, the authority of such agents

should be considered as continuing, for the purpose of process, "in any action against the company, *upon any policy or liability issued or contracted during the time such company transacted business in this State.* (Both italics ours.)

The American Central decision held (318 Mo. l. c. 187; 300 S. W. l. c. 296) that the first italicized phrase was cut down and limited by the second, in consequence of which all actions under the statute must have been based on a policy or liability issued or contracted *in Missouri* while the company was doing business here. It will be noticed also that this 1869 law extended the scope of the litigation in which such service might be obtained to include suits on *liabilities* as well as insurance policies, and to embrace actions instituted after the company had ceased to transact business in Misouri.

Five years later said two sections of the Law of 1869 were amended, respectively by Section 2, page 80, and Section 4, page 74, Laws 1874. Instead of requiring *all* Missouri agents of a foreign insurance company to be made subject to service of process, the two amended sections exacted the appointment for that purpose of only one attorney in fact for the entire State. They further provided the service of process authorized by them should be valid whether issued by the courts of this State or by any of the courts of the United States having jurisdiction within this State. Other added provisions permitted the company to revoke the appointment of such attorney and to substitute another in his stead. Then appeared a provision: "Every such company doing business in this state shall maintain such attorney within the state in the manner herein described, after it shall have ceased to do any new business, *so long as it shall have any policies or liabilities outstanding in this state.*" In these two sections appears for the first time the clause we have italicized, upon which the controversy in the instant case hinges.

Section 6013, Revised Statutes 1879, appeared in an article under the caption "General Provisions," and consolidated, condensed and in some minor respects changed, the two sections of the 1874 law. Laws 1885, page 183, required the Superintendent of the Insurance Department to be appointed service agent instead of a person selected by the company, and Section 5912, Revised Statutes 1889 brought the act to its present form by additions which we need not notice here. The essential provisions of Section 6013, Revised Statutes 1879, bearing on the questions here involved, were enough like those of the present Section 5894, Revised Statutes 1929, to warrant our setting out the following from the latter as reflecting both:

Foreign company desiring to transact business in this State shall appoint Superintendent of Insurance Department "upon whom such process may be served for and in behalf of such company, *in all proceedings that may be instituted against such company, in any court of this state or in any court of the United States in this state,* and

consenting that service of process upon said superintendent shall be taken and held to be as valid as if served upon the company; according to the laws of this or any other state.''

''Service of process as aforesaid, issued by any such court, as aforesaid, upon the superintendent shall be valid and binding, and be deemed personal service upon such company, *so long as it shall have any policies or liabilities outstanding in this state, although such company may have withdrawn, been excluded from or ceased to do business in this state.''* (Italics ours.)

Just as the American Central case had held the first provision of the two cited sections of the Law of 1869 was cut down by the second, so likewise it held (318 Mo. l. c. 188, 300 S. W. l. c. 296) the first broad provision, above, of Section 5894, Revised Statutes 1929, was cut down by the second, making service of process on a foreign insurance company doing (or which had done) business in this State valid ''so long as it shall have any policies or liabilities outstanding in this State.'' Speaking of the effect of this latter provision, the American Central opinion said it intrinsically evidenced a legislative intent that the statute ''should be for the benefit of those persons doing business with such companies in this State;'' and then declared: ''We think the meaning intended was to authorize service of process upon the designated agent in actions founded upon insurance policies and other liabilities outstanding in this State so long as such liabilities continue to remain outstanding.''

This would indicate a view that the policy or liability sued on must have been issued or incurred by the defendant company in the course of its business *in this State*; and that such policy or liability must have been outstanding in this State when suit was instituted thereon. But on the next page (318 Mo. l. c. 189, 300 S. W. l. c. 297) the decision asserts the introduction into the 1879 and subsequent statutes of said clause ''so long as it shall have any policies or liabilities outstanding in this State,'' makes it reasonably apparent that the Legislature intended further to enlarge the scope of the litigation in which such process would be available, by including suits on policies issued *outside* this State in favor of beneficiaries residing here. Says the opinion, ''policies outstanding in this State necessarily include policies written outside of this State which are owned and held by residents of this State at the time suit is instituted thereon.'' Presently thereafter (318 Mo. l. c. 191, 300 S. W. l. c. 298) the court announced its final conclusion, which was that the suit there in judgment could not proceed because the policy on which the plaintiff was suing ''was not made in Missouri and is not outstanding in Missouri.''

This construction of the statute makes it require that a suit be based on: (1) a policy issued and outstanding in Missouri; (2) *or* a policy issued outside of Missouri but owned and held by a resident of this State. Respondent contends the decision means a policy issued.

in Missouri is outstanding here from that fact alone, regardless of ownership, and he therefore argues that on the two bases fixed by the decision a foreign plaintiff can sue on a policy issued in Missouri, or a Missouri plaintiff on a policy issued in a foreign State. If the American Central case does mean that we think it is erroneous. In our view the section requires that the suit must be based on: (1) a policy issued or a liability incurred in Missouri while the company was licensed to do business here; (2) *and* (not or) the policy or liability must be outstanding in this State in the sense of being due here. But when an insurance policy is due in Missouri within the meaning of the section, is still another question, which we shall discuss later.

As to the first requirement, that the policy must have been issued or the liability incurred in this State. We have already pointed out that from 1845 down to the present time the statute has dealt only with foreign insurance companies doing and authorized to do business in Missouri. Since 1897 another statute (Laws 1897, p. 125, now Sec. 5897, R. S. 1929, Mo. Stat. Ann., p. 4499) has provided for service of process upon foreign insurance companies *not* authorized to transact business in this State. The Gold Issue case (267 Mo. 1. c. 575, 184 S. W. 1. c. 1012) held even that section applies only to suits on policies issued in Missouri by unlicensed or ''poaching'' companies. And there can be no doubt about the fact that Section 5894, here involved, makes the same requirement. As we have stated, the revisions of 1845, 1855 and 1865, all limited the process to suits growing out of contracts of insurance made in this State; the 1869 law was construed in the American Central case as imposing a similar limitation; and the 1874 law required the company to maintain a service agent in this State after it had ceased to do any *new* business, so long as it had any policies or liabilities outstanding in this State, thereby showing the latter phrase referred to *old* business already done here.

Reviewing the section as it has stood since 1879 to the present time, we recall that it starts with a provision ''any insurance company not incorporated by or organized under the laws of this State, desiring to transact any business by any agent or agents in this State, shall first file with the Superintendent of the Insurance Department a written instrument'' appointing a statutory agent to receive service of process against it in all proceedings in the State and Federal courts of this State. Then the section continues that ''service of process *as aforesaid*, . . . shall be valid and binding . . . *so long* as it shall have any policies or liabilities outstanding in this state, although such company may have . . . ceased to do business in this state.'' (Italics ours.) And it concludes with a provision that if the company fail to appoint and maintain such

statutory agent, ''it shall forfeit the right to do or continue business in this state.''

All this must refer to policies issued and liabilities incurred in Missouri while the company was doing and licensed to do business here. Nobody contends the section authorizes service of process in suits in this State upon claims originating in other States so long as the company may have outstanding in this State some other *unrelated* policy or liability. The adjective ''outstanding'' refers to the policies or liabilities upon which the suit is to be brought. The fact that the section also says service upon the Insurance Superintendent shall ''be as valid as if served upon the company, according to the laws of this or any other state,'' possibly may by implication authorize constructive service upon him in this State in a proceeding pending in some other State. We do not attempt to decide that question now. But certain it is that the statute requires all suits and proceedings in this State to be based upon business transacted in Missouri, while the company was operating here under license.

This being the first requirement of the statute, and the adverbial clause ''so long as the company shall have any policies or liabilities outstanding in this state'' being only a *limiting* clause, as the American Central case holds, it follows that the latter restricts but does not enlarge the scope of the former. Whereas the earlier provision says the service shall be valid in all proceedings in the State and Federal Courts of this State growing out of business transacted in this State, the latter clause limits such proceedings to actions upon policies issued or liabilities incurred in this State, *but* they must also be outstanding in this State when the suit is filed. There is nothing in the section, as we construe it, which warrants the severance of this last requirement from its context, and putting it in the disjunctive or alternative. We therefore conclude the American Central decision was in error in holding to the contrary.

◼ The policies sued on below were issued in Missouri, thereby complying with the first part of the statute, so we are brought to the real point in the case which is whether they were ''outstanding in this state'' though owned and held for the purpose of collection by the plaintiff assignee, Bernblum, who was a nonresident. A policy, debt, title, liability or the like, is outstanding when it is existing, undischarged and (sometimes) valid. [Webster's New International Dictionary (2 Ed.); Words and Phrases, 1st, 2nd, 3rd and 4th Series; 46 C. J., p. 1160.] An insurance policy or liability therefore would be outstanding in this State when it is existing and unsatisfied in Missouri.

But when is an insurance policy or a liability existing and unsatisfied in this State, within the meaning of the statute? Ordinarily a *claim* would be outstanding here when it is due to someone living here. And we grant *arguendo* that would be true of the *liabilities*

mentioned in the statute. But the statute says the *policy*, not the claim thereon, shall be outstanding in this State. And as we said in the beginning Section 5894 appears in an article containing general provisions dealing with all kinds of insurance: fire, tornado, life, endowment, annuity, liability, accident, health and the like. Many such policies are tripartite, at least in interest. The company insures the life of one person for his benefit and also for the ultimate or contingent benefit of another. This is sometimes true of accident policies. Fire insurance policies are often made payable to a mortgagee, or other third person, as his interest may appear. Policies are frequently assigned for the benefit of a third person.

It is evident that the word "outstanding" is used loosely and indiscriminately in the statute covering many dissimilar situations. We are loath to believe the Legislature meant: if a licensed foreign insurance company should insure the life of A, a resident of Missouri, for his own benefit and the benefit of B, a nonresident, that A could sue but B could not sue in the courts of this State and get service under Section 5894; or that if C, a nonresident, owned a building in Missouri and took out fire insurance thereon, he could not sue on the policy in this State; or that any insurance legally issued in this State covering a life or property in this State cannot be collected in the courts of this State by the beneficiary if he be a nonresident. As is said in 12 Corpus Juris, section 64, page 470: "By a fiction of law, moveables or personal property are deemed attached to the person of the owner, and so, present at his domicile, whatever their actual location may be, hence the general rule is frequently stated that personalty is governed by the *lex domicilii* of the owner; but the *situs* attached theoretically to the person of the owner and, therefore, to his domicile surrenders to the actual *situs* where justice and convenience demand it, and the tendency is more and more to disregard the fictitious *situs*."

The statute evidences an intent to view insurance policies as of the time of their issuance. It requires a foreign company doing business in Missouri to appoint the Superintendent of Insurance as agent for service of process, and says such service shall be valid *so long* as the company shall have outstanding in this State any policies or liabilities issued or contracted in the course of such business, thus looking back to the time of their creation. At that time the person taking out and covered by life, accident or health insurance ordinarily is the one primarily interested in it. Fire or other like insurance is issued to protect the owner against loss of his property or damage thereto, and in a sense stands in lieu of property in this State covered thereby. We believe the statute regards a policy issued in Missouri as outstanding in this State, so long as it remains in force covering a life, person or property in this State. This construction would exclude policies issued in other States and also pol-

icies issued in this State on persons or property outside of or removed from the State. But it would include policies issued in this State on the life or person of a resident who remains here until the claim accrues, even though the ultimate beneficiary or assignee be a nonresident. It would include also fire and other property insurance on property remaining in Missouri though the insurance be payable to a nonresident. This may be the reason why the statute validates process issued by the Federal courts, as the Pacific Mutual case suggests, 239 Mo. l. c. 135, 143 S. W. l. c. 491.

Section 5894 is exceedingly obscure. This is the fourth time it has been construed by this court en banc and on each occasion great difficulty has been experienced in interpreting it. As stated in the beginning, there were divergent views and dissenting opinions in the first two cases, the Pacific Mutual decision and the Gold Issue decision. We are now overruling the American Central case to the extent above indicated. The General Assembly of this State will convene in a few months. This section has stood without amendment so far as concerns the part under construction here for over sixty years. The primitive ideas of insurance existing more than ninety years ago have been carried into the present statute. If the Legislature see fit to clarify it they may do so. The constitutional power of this court is limited to construing it as it stands. We hold that so far as Section 5894 is concerned, the two policies here involved were issued and outstanding in this State, the latter for the reason that their coverage protected the life and health of the insured, Robert J. England, a resident of this State, when they were issued and when the claim thereon arose. This being true, the fact that the plaintiff assignee, Bernblum, is a nonresident, is immaterial. The question is not before us as to whether Bernblum is a real party in interest and an assignee in good faith in such sense as will prevent a removal of the case to the Federal Court.

One more point. Not only did Bernblum obtain service upon the Superintendent of the Insurance Department in the suit below under said Section 5894, relating to service of process on licensed foreign insurance corporations. He also had a summons issued and served on a person allegedly in charge of the office of the relator in Kansas City, Missouri, under the fourth subdivision of Section 728, Revised Statutes 1929 (Mo. Stat. Ann., p. 947), the service statute applicable to foreign corporations in general. This subdivision of Section 728 was first enacted in Section 3489, Revised Statutes 1879. By Laws 1881, page 173, the General Assembly declared service under the section should have the effect of personal service. Respondent asserts it supplements Section 5894, and that process is available under either statute, notwithstanding the Pacific Mutual case, 239 Mo. l. c. 160-1, 143 S. W. l. c. 490, and the Gold Issue case, 267 Mo. l. c. 575, 184 S. W. l. c. 1012, held Section 5894 provides the

exclusive method for serving licensed foreign insurance companies. Respondent contends that in so holding both these decisions went astray, in following Baile v. The Equitable Fire Ins. Co., 68 Mo. 617, and Middough v. The St. J. & D. C. Railroad Co., 51 Mo. 521, without noticing that the latter were decided before the enactment of Section 728 in 1879, at a time when the legislative forbears of Section 5894 were the only statutes in existence governing service in foreign corporations.

But as the statutes now stand we think Section 5894 does provide the sole method of getting service on licensed foreign insurance companies, and that the Pacific Mutual case and the Gold Issue case correctly so ruled. The Legislature evidently thought so because, as we have already pointed out, they passed another statute in 1897, now Section 5897, Revised Statutes 1929 (Mo. Stat. Ann., p. 4499), long after the enactment of Section 728, in which later statute they provided for service of process on foreign insurance companies *not* authorized to transact business in this State. And, furthermore, it was ruled in State ex rel. Missouri State Life Ins. Co. v. Hall, 330 Mo. 1107, 52 S. W. (2d) 174, a banc decision decided in 1932, which has been followed several times since, that Chapter 37, Revised Statutes 1929 (Mo. Stat. Ann., pp. 4340 to 4349), is a code unto itself.

For the reasons stated our provisional rule in prohibition is ordered quashed. All concur.