AETNA CASUALTY & SURETY CO. v. GENTRY.

No. 30714. Nov. 10, 1942.

Rehearing Denied Jan. 5, 1943.

*132 P. 2d 326.*

W. E. Green, J. C. Farmer, and A. L. Deaton, all of Tulsa, for plaintiff in error.

Harry G. Davis and Thomas J. Wiley, both of Muskogee, for defendant in error.

DAVISON, J. This is an action by a resident of this state against a domesticated foreign insurance company based upon a cause of action which arose in the State of Kansas. Service of summons was had upon the State Insurance Commissioner as service agent of the company. The principal question to be decided in this case is whether under our statutes such service confers jurisdiction of the person of the company for the purpose of deciding a controversy which arose outside the state.

The cause originated in the district court of Muskogee county, Okla., wherein Mrs. Ethel F. Gentry was plaintiff and the Aetna Casualty & Surety Company, Hartford, Conn., was defendant. The defendant was served by service of summons on the State Industrial Commissioner. The cause was tried to a jury, resulting in a verdict and judgment for $2,999, which the Aetna Casualty & Surety Company, as plaintiff in error, seeks to reverse on appeal. In this opinion we shall refer to the parties by their trial court designation when not otherwise more specifically described.

A review of the record discloses the following facts: The plaintiff is a resident of Muskogee county, Okla. On August 28, 1939, she was riding in an automobile along a public highway in Kansas. At the same time the Star-Peerless Brewery Company, an Illinois corporation, was operating a truck along the same highway. Both vehicles were traveling the same direction. The driver of the car in which plaintiff was riding undertook to pass the truck. The truck swerved to the left and the two vehicles collided, resulting in personal injuries to the plaintiff. The defendant company had previously issued a policy of insurance in favor of the above corporation containing public liability and property damage features. The policy was in effect at the time of the accident. It is on the contractual liability assumed under the insurance policy that this action is based.

The defendant does not challenge the sufficiency of the evidence to support the view that the driver of the beer truck was negligent. Similarly, it does not contend that its contract does not cover the act of negligence which occasioned plaintiff's injury. The necessity of discussing details covering these features of the case is thus eliminated.

The defendant first urges that service of summons upon the State Insurance Commissioner does not confer jurisdiction to try and determine a cause of action which arose outside the state. As we understand the briefs presented, it is not thought that there is any constitutional inhibition against making service of the character here involved adequate for the purpose for which it was used in this case. It is urged, however, that the legislative enactments of this state are not so drafted as to cause the service to have that effect. Indeed, the question of whether a state can, without violating federal constitutional inhibitions, enact statutes governing domesticated foreign corporations, which render them subject to the jurisdiction of the courts of this state on transitory causes of action which arose outside the state, is foreclosed by the decision of the United States Supreme Court in Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co., 243 U. S. 93, 37 S. Ct. 344, 61 L. Ed. 610. Therein such service upon a designated officer of the State of Missouri was upheld to support a judgment based

upon a cause of action which arose in California. The service was, of course, first upheld in the Missouri courts. That case was decided in 1917. Later (1927) the Missouri court in State ex rel. American Central Life Ins. Co. v. Landwehr, Circuit Judge, 318 Mo. 181, 300 S. W. 294, retracted their former holding with reference to the effect of their own statutes. This subsequent holding did not militate against the decision of the Supreme Court of the United States that state legislation and designation of an agent pursuant thereto construed by the state courts to be sufficient to vest jurisdiction over causes of action of extraterritorial origin is free from constitutional objections.

An examination of the decisions of the federal court with reference to the question discloses the following: (1) The power of the various states to enact valid legislation which authorizes the service of process upon an officer of the state as an agent of a domesticated corporation in connection with a cause of action which arose outside the state is recognized and approved (subject, of course, to the qualification that such service must be reasonably calculated to bring the litigation to the attention of the corporation). (2) When the legislative intent is not clear and the state court has not otherwise spoken on the subject, federal courts favor a construction which excludes from the operation of such statutes causes of action arising outside the jurisdiction of the state. (3) When the state court has spoken upon the subject its decision governs the federal court as to the meaning of the statute. Penn. Fire Ins. Co. v. Gold Issue Mining & Milling Co., supra; American Indemnity Co. v. Detroit Fidelity & Surety Co. et al., 63 F. 2d 395; Louisville & N. R. Co. v. Chatters, 279 U. S. 320, 49 S. Ct. 329, 73 L. Ed. 711; Morris & Co. v. Skandinavia, 279 U. S. 405, 49 S. Ct. 360, 73 L. Ed. 762; Camp v. Cities Service Gas Co., 17 Fed. Supp. 618; Mooney v. Buford & George Mfg. Co., 72 Fed. 32.

It is thus apparent that we are confronted with a question upon which our own statutes constitute the guide and, as in other cases of statutory construction, the intent of the Legislature, when ascertained, is of controlling importance.

As a prelude to our discussion it is appropriate to observe that a somewhat analogous question has frequently been before the courts when in a transitory action which arose in another jurisdiction service has been obtained on the defendant corporation by service on an actual agent of the corporation. In such cases the decided weight of authority supports the view that jurisdiction over the person of the corporation attaches for the purpose of deciding the controversy which originated beyond the boundaries of the state. Annotation 30 A. L. R. 255, at 258; 96 A. L. R. 366; see, also, 21 R. C. L. 1345. In principle, there are many points of similarity between the situation involved in the numerous cases reviewed in the foregoing annotations and the case at bar.

While a corporation is recognized in law as a legal entity, it acts and can operate only through its officers and agents. Process cannot be served upon the corporation except by service upon some person who is designated by law or by the act of the corporation taken in conjunction with the law. 42 Am. Jur. 92.

Corporations created by one state which seek to do business in another must seek the privilege and obtain the permission of the latter jurisdiction, and it is incumbent upon them to meet and comply with such conditions as may be properly imposed. The designation of some one of the state officers as a person upon whom service may be had is frequently required as a condition to domestication. Such requirements are universally upheld when they are reasonably calculated to operate as reasonable notice to the corporation being sued. 21 R. C. L. 1347; 23 Am. Jur. 491.

Of course, the person selected in such cases is not the voluntary choice of the corporation. In a measure he may be said to be forced upon the corporation. But the manner of his selection does

not indicate that it is less probable that he will notify the defendant when the litigation is based upon a cause of action which arose within the state than when the action is founded upon an occurrence without the state. Obviously, if the service is good in one it can be made good in the other. With these thoughts in mind, let us turn our attention to the statutes of this state for the purpose of determining whether they were correctly interpreted by the trial court.

Title 36 O. S. 1941 § 101 (Session Laws 1925, ch. 131, pg. 196, § 1) provides in part:

"No foreign insurance company shall be admitted and authorized to do business in this state until: . . .

"Fourth: It shall, by duly executed instrument filed in his office, constitute and appoint the insurance commissioner, or his successor, its true and lawful attorney, upon whom all lawful processes in any action or legal proceeding against it may be served and therein shall agree that any lawful process against it, which may be served upon its said attorney, shall be of the same force and validity as if served upon the company, and that the authority thereof shall continue in force, irrevocable, as long as any liability of the company remains outstanding in this state. Any process issued by any court of record in this state, and served upon such commissioner by the proper officer of the county in which said commissioner may have his office, shall be deemed a sufficient process on said company, and it is hereby made the duty of the insurance commissioner to promptly, after such service of process, forward by registered mail, an exact copy of such notice to the company; or, in case the company is of a foreign country, to the resident manager in this country; and also shall forward a copy thereof to the general agent of said company in this state. For power of attorney, each company shall pay a fee of three dollars, and for each copy of process, the insurance commissioner shall collect the sum of three dollars, which shall be paid by the plaintiff at the time of such service, the same to be recovered by him as a part of the taxable cost, if he prevails in his suit."

And 36 O. S. 1941 § 101a (S. L. 1937, pg. 375, § 1) provides:

"All service of process issued by any court of record in this state, in any action or legal proceeding instituted against a foreign insurance company, corporation, association or society that has, pursuant to the laws of this state, or shall hereafter appoint the Commissioner of Insurance, or his successor, as its true and lawful attorney for service, as is provided by the laws of the State of Oklahoma, may be served upon the Commissioner of Insurance or upon the duly appointed and acting Assistant Commissioner of Insurance. Process served upon the Assistant Commissioner of Insurance, as herein provided, shall be of the same force, effect and validity as if served upon the Commissioner of Insurance, and no process issued by any court of record in this state, in any action or legal proceeding instituted against foreign insurance companies, corporations, associations or societies, authorized to do business in this state, shall be served other than upon the Commissioner of Insurance and/or the Assistant Commissioner of Insurance."

The record in this case reflects that at the time summons in this action was served by service upon the State Insurance Commissioner, the defendant insurance company was licensed to transact business in the State of Oklahoma and that the State Insurance Commissioner was then its duly appointed agent for the purpose of service. The authorization was, of course, pursuant to the above-quoted statutory requirements and is deemed as broad as but no broader than the requirement thereof.

In support of its position the defendant company cites and emphasizes the decisions of the Supreme Court of Missouri. State ex rel. American Central Life Insurance Co. v. Landwehr, supra; and State of Missouri ex rel. Phoenix Mutual Life Ins. Co. of Hartford, Conn., v. Brown Harris, Judge, 343 Mo. 252, 121 S. W. 2d 141, 119 A. L. R. 862.

We have already noticed the situation involved and the holding of the court in the first mentioned case. A comparison of the statutes involved in that case with the statutory provisions

of our own state discloses sufficient similarity to make the holding persuasive in this jurisdiction. However, the force of the Missouri decision is somewhat weakened by the fact that the Missouri court arrived at its conclusion on the question of statutory interpretation by tracing the peculiar history of their statute. The historical factor thus became and was a major factor in determining the legislative intent. The history of our own statute is not the same nor is it such as to create a parallel situation. The later Missouri case, State ex rel. v. Harris, supra, is in its nature supplementary to the former, and insofar as the question of statutory construction now before us is concerned adds little, if any, light to our own problem.

The defendant also relies upon the case of Osage Oil & Refining Co. v. Interstate Pipe Line Co., 124 Okla. 7, 253 P. 66, wherein we said in the second paragraph of the syllabus:

"Under the provision of article 1, c. 10, S. L. 1909 (Comp. Stat. 1921, §§ 5432-5438), only residents or citizens of the state may maintain actions in the court of the state against foreign corporations authorized to transact business in the state, where substituted service on the Secretary of State is relied on to give jurisdiction of the person, and such action must be one growing out of a transaction with such corporation within the state, and must be brought in the county of the state in which the cause of action arose."

The case relied upon is not of controlling importance in the case at bar. It is based upon a different statute differently worded and by its own terms does not lend itself to the broad effect which may be attributed to the language used in the statute now before us. The statutes upon which the cited case is based are, as therein expressed, sections 5432-5438, Compiled Statutes 1921. More particularly it rested upon sections 5436 and 5433, C. O. S. 1921, now appearing as 18 O. S. 1941 §§ 455 and 452.

In our former decision we said in substance the language of that statute did not authorize suit upon a cause of action which arose outside the state. We also went a step further and said that such authority could not exist upon constitutional considerations (the due process clause). In the latter respect we were in error, as indicated by the decision of the Supreme Court of the United States in Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co., supra.

Thus our former decision does not control for two reasons, namely, the difference in the statutes involved and the fact that the theory which would eliminate consideration of the difference (the theory of constitutional limitations as therein expressed) was erroneous.

In connection with the statute now before us and the construction which here should be placed on the same, the defendant company calls special attention to the appearance therein of the words "as long as any liability of the company remains outstanding in the state." With reference to this clause they say:

"The phrase 'as long as any liability of the company remains outstanding in this state' certainly shows by its own wording that the statute should be applicable only to causes of action and business transacted in this state, and not outside the state. . . ."

We are not disposed to attribute this meaning to the language used. It has reference to the duration of the authority rather than the scope and intent thereof.

A similar question relating to an Indiana statute was before the federal court in Mooney v. Buford & George Manufacturing Co., 72 Fed. 32. It was therein said:

"The clause in the Indiana statute, 'while any liability remains outstanding against such company in this state,' like the corresponding phrase in the statute of Massachusetts, is a limitation only of the time within which the company may be bound by service upon its agents in the state, and not a restriction upon the character of suits in which process against it may be issued."

The view thus expressed corresponds with our own.

The scope of the authority intended to be conferred is governed by the language preceding the clause pointed out by the company. It provides that the Insurance Commissioner can be served "in any action or legal proceeding against it," and that the process shall be of the same force and validity as if served upon the company. More comprehensive language could not have been selected by the Legislature to include all types of actions which might be brought within the jurisdiction by other types of service upon a corporation which necessarily includes actions by residents of this state on liabilities which accrued in their favor on transactions which occurred outside the state, since, as we have noted, such actions can, according to the decided weight of authority, be maintained against a domesticated foreign corporation when service is obtained on an actual agent.

In the statute before us the Legislature chose language which in its ordinary acceptation is calculated to comprehend actions of the character here involved. A requirement on our part that specific enumeration of the included types of actions be incorporated in order to accomplish their manifest purpose would, it seems, be arbitrary and create an unwarranted precedent. We are of the opinion, and hold, that the statute makes the courts of this state available to residents of the state for the enforcement of liabilities not based upon assignment due them from domesticated foreign insurance companies. We express no opinion as to whether the former is open to nonresidents or to residents on a claim acquired by assignment.

Our interpretation of the statute now before us is in accord with the holding of the federal court in Mooney v. Buford & George Manufacturing Co., supra. It is also supported by the reasoning and holding of the Supreme Court of Tennessee in Patton v. Continental Casualty Co., 119 Tenn. 364, 104 S. W. 305.

The existence of our duty to interpret our own statutes is supported by all decisions, and the right of our own Legislature to enact legislation having the effect of the statute now before us is supported by better reasoned cases. It follows that the trial court did not err in its decision on the jurisdictional question.

It is next contended by the defendant company that:

"Although the right to sue a surety on a bond required under a certificate of convenience and necessity without joining the assured motor carrier might exist in the State of Kansas, such constitutes merely a procedural or remedial right under the law of the forum, and as such is not recognizable or enforceable under the law of Oklahoma, a foreign jurisdiction where such right does not exist."

In support of this proposition reliance is placed upon Wray v. Ferris, 187 Okla. 428, 103 P. 2d 942; Wray v. Garrett, 185 Okla. 138, 90 P. 2d 1050; Enders v. Longmire, 179 Okla. 633, 67 P. 2d 12; Jacobsen v. Howard, 164 Okla. 88, 23 P. 2d 185.

It may be assumed without specific analysis of the foregoing cases that under the law of this state a primary and several liability as distinguished from a joint liability or secondary liability to an injured person is not recognized to exist. However, many of the cases relied upon hold or intimate that where a primary and several liability exists an insurance company cannot be separately sued. In fact, suits against insurance companies on separate and severable liability is a matter of everyday occurrence.

The contract now before us was made in Kansas under Kansas law and pursuant to provisions and requirements of the laws of that state. The nature of the liability on the contract which involves its interpretation is governed by the law of the state where it was made when that law is properly established. Consolidated Flour Mills v. File Bros. Wholesale Co., 110 F. 2d 926; Monahan v. New York Life Insurance Co., 26 Fed. Supp. 859; Mortgage Bond Co. v. Stephens, 181 Okla. 182, 72 P. 2d 831; Clark v. First National Bank of Marseilles,

Ill., 59 Okla. 2, 157 P. 96; Wagner v. Minnie Harvester Co., 25 Okla. 558, 106 P. 969.

In this case the plaintiff relied upon and established by proof the law of Kansas. She introduced in evidence the following Kansas cases: State Highway Commission v. American Mutual Liability Insurance Co. of Boston, 146 Kan. 187, 70 P. 2d 20; Twichell v. Hetzel, 145 Kan. 139, 64 P. 2d 557; Dunn v. Jones, 143 Kan. 218, 53 P. 2d 918, from which it appears that under the law of Kansas insurance contracts of the character now before us executed pursuant to the requirements of the Kansas statutes are treated as third party beneficiary contracts creating a direct, primary and several liability.

Interpreting the contract, then, according to the Kansas law, we find that it creates a type of liability enforceable in this state in a suit against the insurance company alone. The trial court was correct in so holding.

The record before us being free from substantial error, the decision of the trial court is affirmed.

WELCH, C. J., and OSBORN, BAYLESS, GIBSON, and HURST, JJ., concur. CORN, V. C. J., and RILEY and ARNOLD, J., absent.