Melville L. MORRIS, Plaintiff and Respondent,

v.

Dwane J. SYKES and Patricia Sykes, Defendants and Appellants.

No. 16838.

Supreme Court of Utah.

Jan. 21, 1981.

---

* CROCKETT, Justice, concurred in this case before his retirement.

M. Dayle Jeffs of Jeffs & Jeffs, Provo, for defendants and appellants.

A. H. Boyce, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice: *

Plaintiff Morris sued for specific performance of a contract to purchase some undeveloped land in Alaska by compelling defendants Sykes to accept the balance thereon and convey the land to the plaintiff, or in the alternative, to relieve the plaintiff from an unjust and inequitable forfeiture of the $23,216 plaintiff had paid on the contract. Upon a trial to the court, it found against the plaintiff on the issue of requiring defendants to convey the property to the plaintiff, but as a part of that judgment permitting the defendants to keep their property, the court decreed an equitable reimbursement of $14,121 to the plaintiff. Defendant appeals.

On October 3, 1974, the plaintiff entered into a contract to purchase from the defendant a vacant parcel of land of approximately 27 acres known as Tract B of the Musk Ox Subdivision, located near Fairbanks, Alaska. The purchase price was $40,000, to be paid $2,000 down, with monthly payments of $350 beginning December 1, 1974. The contract further provided that plaintiff was to pay $1,000 on November 1, 1974, $5,000 on February 1, 1975, $5,000 on August 1, 1975, and $3,000 on each succeeding February 1 and August

---

* Justice Crockett wrote this opinion prior to his retirement.

1 until November 1, 1979, when the contract balance was to be paid in full. The rate of interest on the unpaid balance was ten percent.

The payments were to be made to the First National Bank of Fairbanks, Alaska, the same bank which held a trust deed on the property previously executed by the defendant. The bank was instructed by the parties that all money received from plaintiff on the contract was to be applied on the debt.

Plaintiff made the down payment, but the monthly and periodic payments were made sporadically, and in amounts different than called for by the contract. As a result, plaintiff was continually in default under the contract. The defendant sent written notices to the plaintiff advising him that as of January 1, 1976, he would be five months delinquent in the sum of $1,750. These communications further advised the plaintiff that defendant was depending on the payments to meet his obligations to the First National Bank of Fairbanks on the underlying mortgage.

During December, 1975, defendant offered to sell plaintiff two additional parcels in the Musk Ox Subdivision. These negotiations, however, were not fruitful.

The defendant continued to accept late and partial payments on the contract and between the date of purchase and by August 2, 1976, plaintiff had made payments totaling $23,216, $3,507 interest to August 2, 1976, and $19,709 principal. On September 2, 1976, offered to prepay the remaining principal if defendant would give him a "good discount" for so doing. Defendant refused and on November 11, 1976, pursuant to the terms of the contract, defendant caused a notice of termination to be issued and served upon the plaintiff. Defendant then recorded the quitclaim deed from plaintiff to defendant and retained all payments made by the plaintiff. Various offers of reinstatement were made by defendant to plaintiff but these offers were refused by plaintiff because they were conditioned on plaintiff's purchase of additional property and the payment of a reinstatement fee.

On February 9, 1977, the bank informed the defendant that unless he paid the $3,318 delinquency on the underlying mortgage within 30 days, the entire unpaid balance on the mortgage would be declared due. Thereafter, on February 15, 1977, the defendant entered into a contract for the sale of the property to Johnny M. Iverson, his brother-in-law, for $20,663, approximately the amount defendant would have received had plaintiff performed on the contract. Plaintiff was not given any advance notice of the defendant's plan to sell the property to Iverson. The parties are in agreement that at that time it would have been quite impractical to sell the property on the market because it was under heavy snows and therefore inaccessible.

Upon its analysis of the total situation, it was the judgment of the trial court that the plaintiff should not be granted specific performance, but nevertheless, that to permit the defendant to retain the entire $23,216 which plaintiff had paid would constitute a forfeiture so unconscionable that the court could not approve it; and therefore ordered the defendant to return $14,121 as a condition to exonerating himself and his property from plaintiff's claim.

On appeal, the defendant urges enforcement of the forfeiture provision of the contract and seeks reversal of the judgment on the grounds that the trial court: 1) misapplied the Alaska law on forfeiture and damages, 2) wrongfully held that there was an unconscionable forfeiture which the court would not enforce, 3) erroneously ruled that the plaintiff should have been given definite notice, and opportunity to remedy any defaults, before the sale to Iverson.

Defendant's argument that the trial court misapplied the law of Alaska in regard to forfeitures gives us no grave concern here. We have no disagreement with the proposition that where a contract is entered into and is to be performed in a foreign jurisdiction the law of that jurisdic-

tion should be applied;[1] and this is particularly so when the contract deals with land in that jurisdiction.[2] Therefore, it is our duty to apply the substantive law of Alaska to this controversy.[3] However, as correctly stated by the trial court, we see no significant difference between the law of Alaska and our own in regard to the enforceability of such a contract and the forfeiture clause therein. Under such circumstances, the court may properly apply Utah law in the absence of an affirmative showing that the law of Alaska is different.[4]

█ Defendant's attack upon the requirement that he repay $14,121 of the $23,-216 which plaintiff had paid him is premised upon a forfeiture provision that upon the buyer's default the seller may retain all amounts paid on the contract and terminate plaintiff's interest in the property. It is true that where the parties to a contract stipulate to a forfeiture and liquidated damages, such stipulation will generally be enforceable.[5] It is, however, well established in Utah,[6] as well as Alaska,[7] that where a forfeiture under the literal terms of a contract results in awarding to a party a sum so entirely disproportionate to any damages he may have suffered that it shocks the conscience of the court, a court of equity will neither approve nor enforce such a penalty.

█ Defendant's final contention is that the court erroneously ruled that he should have given more definite notice of his intent to forfeit the contract, and of his intended sale to Iverson. The decision of the trial court indicates that he was not convinced that the defendant gave plaintiff definite notice that he must pay up, or

forfeit the payments he had made and his rights under the contract. We agree with the trial judge that fairness would require such a notice, and of the defendant's intention to sell the property to someone else. He noted that the parties were negotiating a reinstatement up to the time of the unilateral termination of the contract by the defendant.

█ Specific performance is a remedy of equity which is addressed to the sense of justice and good conscience of the court, and accordingly, considerable latitude of discretion is allowed in his determination as to whether it shall be granted and what judgment should be entered in respect thereto; and his ruling thereon should not be upset on appeal unless it clearly appears that he has abused his discretion,[8] a circumstance we have not perceived as being present here.

Affirmed. No costs awarded.

STEWART, J., and HENRIOD, Retired Justice, concur.

MAUGHAN, C. J., does not participate herein; HENRIOD, Retired Justice, sat.

WILKINS, J., heard the arguments but resigned before the opinion was filed.

HALL, Justice (concurring):

My review of the record does not disclose the evidence, if any there was, of *actual* damage which the trial court weighed in reaching its determination that enforcement of the liquidated damage provision of

1. See, e. g., *Aetna Casualty & Surety Co. of Hartford, Conn. v. Gentry*, 191 Okl. 659, 132 P.2d 326 (1942); *Catchpole v. Narramore*, 102 Ariz. 248, 428 P.2d 105 (1967).

2. *Conant v. Deep Creek & Curlew Valley Irr. Co.*, 23 Utah 627, 66 P. 188 (1901).

3. Matters of procedure in a contract action are, of course, governed by the law of the forum. See, e. g., *Lilienthal v. Kaufman*, 239 Or. 1, 395 P.2d 543 (1964).

4. See *Booth. v. Crompton*, Utah, 583 P.2d 82 (1978), and cases cited therein.

5. See *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446, 449 (1952), and cases cited therein.

6. See, e. g., *Jacobson v. Swan*, 3 Utah 2d 59, 278 P.2d 294 (1954).

7. See, e. g., *Moran v. Holman*, Alaska, 501 P.2d 769 (1972).

8. *Ferris v. Jennings*, Utah, 595 P.2d 857 (1979), and cases cited therein.

the contract would be unconscionable.[1] Nevertheless, the issue was not raised below, nor on this appeal. Consequently, I concur in affirming the judgment.

1. See *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446 (1952).