MITCHELL MANUFACTURING COMPANY v. KEMPNER.

Opinion delivered November 18, 1907.

84    349
'89    110
89    313
90    28

1. REFORMATION OF INSTRUMENT—SUFFICIENCY OF EVIDENCE.—A written contract will not be reformed except upon clear and satisfactory proof that the writing fails, by reason of fraud, accident or mutual mistake in the preparation or execution thereof, to express the agreement intended to be entered into. (Page 352.)

2. SAME—SIGNING WITHOUT READING.—One who has opportunity to read a contract before signing it can not escape its obligation by showing that he signed without having read it. (Page 352.)

3. SALE OF CHATTEL—WHEN WARRANTY NOT IMPLIED.—A warranty will not be implied in a written contract of sale where the contract contains an express stipulation against such warranty. (Page 353.)

4. SAME—MISREPRESENTATION—SUFFICIENCY OF PROOF.—Although, where a vendor positively misrepresents a material fact which is peculiarly within his knowledge and of which the purchaser is ignorant, the fact that he refuses to give a warranty is not inconsistent with his liability for fraud, yet, where there is in a written contract of sale

an express stipulation against warranty, the proof of such misrepresentation must be clear and satisfactory. (Page 353.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

*W. E. Atkinson,* for appellant.

1. Appellees not entitled to reformation because: (1), They signed without reading, when no fraud was practiced to prevent it, and are bound by it. 71 Ark. 185. (2) There was no mutual mistake of the parties, if any mistake existed. 71 Ark. 614. The contracts put them on notice that they took the risk, for it is so expressly provided. The misrepresentations of the agent were clearly an afterthought, and their letters disprove their defense.

2. Mere preponderance of evidence is not sufficient to avoid a contract for fraud. It must be clear and convincing. A higher degree of evidence is exacted. 4 Wigmore, Evidence, § 2498; 39 S. W. 881; 12 Heisk. 28; 8 Humph. 233; 1 Johns. Ch. 590; 2 *Id.* 585; 121 U. S. 379; 128 *Id.* 673; 167 *Id.* 224; 37 Ark. 149; 55 *Id.* 152; 66 *Id.* 155; 72 *Id.* 72.

3. The Kempners nowhere in their correspondence intimated fraud or ignorance of contents of contract. They chose their grounds for relief, and must stand there. They are estopped from setting up different grounds. 96 U. S. 259; 61 Wis. 623; 37 Minn. 465; 9 Utah, 105.

*Morris M. Cohn,* for appellees.

1. The contracts were not enforceable because of fraud and misrepresentation. 32 Ga. 704; 2 Head (Tenn.), 526, 531; 54 Fed. 87; 4 C. C. A. 199; 101 N. W. 447. Fraud vitiates everything it touches, and parol evidence is always admissible to show that the execution of an instrument was procured by fraud, or that by reason thereof it does not express the intention of parties. 17 Cyc. 695, note 14; 73 Ark. 470; 83 Ark. 15; 72 Ark. 343; 35 *Id.* 483. This is so where there is no warranty. 31 Ark. 170.

2. As to what amounts to fraud, see 7 Ark. 166; 14 *Id.* 21; 38 *Id.* 334; 30 *Id.* 362.

3. Where there is fraud, equity has jurisdiction. 33 Ark. 425; 14 *Id.* 345. And will rescind contract and restrain its

enforcement. 11 Ark. 58; Pom. Eq. Jur. c. 3, § 3, par. 872 to 921, 910-921; 73 Fed. 574; 73 Cal. 452; 2 Am. St. 823; 15 Pac. 82.

4. When a merchant, in the hurry of business, known to vendor, does not read a contract, it makes the duty of dealing honestly that much the greater—he must not take advantage of it, for it would amount to a trick. 42 Ark. 362, 369-370; 38 Id. 334; 60 Id. 387; 1 Bigelow on Fraud, 526.

McCULLOCH, J. The Mitchell Manufacturing Company, an Ohio corporation, is engaged in the business of manufacturing and leasing machines called "The Silent Shoe Lace Salesman," which are designed for use in selling shoe laces. Shoe laces are placed in these machines in pairs, and the machine is operated by dropping a nickel in a slot which causes a pair of laces to be released and passed out to the operator. They are set in public places, such as hotel lobbies, barber shops, railroad waiting rooms, etc., and in this way become, as the name implies, silent shoe lace salesmen. Appellant also manufactures for sale to the lessees of machines shoe laces, each pair being inclosed in a paper wrapper or tube with the name and business of the lessee printed thereon, so as to be an advertisement of his business and wares. The machines are usually leased to retail shoe dealers, and, as is explained in the testimony, they serve, not only to advertise the business of the dealer, but help to correct the unprofitable habit which retail shoe dealers are said to indulge in giving away laces too frequently.

On April 12, 1904, appellees, Ike Kempner & Bro., who are retail merchants in the city of Little Rock, contracted with appellant in writing for the lease of five of these machines for a term of years at the rental price of $40 for each machine and pedestal, and for the purchase of 10,000 pairs of shoe laces at an agreed price. A separate contract was executed for each machine, and a printed form prepared by appellant was used. The contracts contained numerous provisions with reference to the use and care of the machines and sale of laces, and also contained a stipulation in the following words, viz.: "This machine is not guarantied against slugs, spurious coin or the weather."

Appellees refused to accept the machines and laces, after

being shipped to them pursuant to the contract and instituted this suit in equity to have said contracts reformed by striking therefrom the stipulation quoted above with reference to guaranty against "slugs, spurious coin and the weather."

It is alleged in the complaint that the agent of appellant who procured the execution of said contracts by appellees falsely represented to them that the machines would operate successfully by allowing the laces therein placed to come out in single pairs upon depositing a nickel in the slot, and that the machines were so constructed that slugs, spurious coin and other substances could not be used successfully in operating them. Reformation of the contract is sought, and also cancellation of the same, on account of a breach of the implied warranty of the machines and on account of the falsity of the alleged representations.

Appellant filed its answer and cross-complaint, denying the allegations of the complaint with reference to false representations of its agent and praying judgment against appellees for the contract price of the machines and laces.

The court decreed a cancellation of the contracts, and the defendant and cross-complainant appealed to this court.

The pleadings and proof present no grounds for reformation of the contracts. It is neither alleged nor proved that any contract was agreed upon other than the ones signed by appellees; nor that appellant's agent misrepresented the contents of the writings presented to appellees for their signature. The written contracts contained an express stipulation that the machines were "not guarantied against slugs, spurious coin or the weather;" and, until it is established that this stipulation was inserted in the contracts by fraud, accident or mutual mistake, it must be taken as a true expression of the agreement of the parties. The solemn written engagements of contracting parties cannot be reformed or amended except upon clear and satisfactory proof that the writing fails, by reason of fraud, accident or mutual mistake in the preparation or execution thereof, to express the agreement intended to be entered into. *McGuigan* v. *Gaines,* 71 Ark. 614; *Goerke* v. *Rodgers,* 75 Ark. 72; *Marquette Timber Co.* v. *Chas. T. Abeles Co.,* 81 Ark. 420.

It is not claimed by appellees that appellant's agent represented to them that the written contract contained a warranty

against the successful use of other substances than nickels in the operation of the machine; nor that it did not contain a stipulation against such warranty. They claim merely that he represented that the machines were more complete than those formerly in use, and would not respond to slugs and spurious coins. Dave Kempner, the party who executed the contracts for appellees, testified that he signed them hurriedly without having read them. This is denied by the agent, who testified that Mr. Kempner read the contracts. It is, however, unimportant whether he read them or not. He had ample opportunity to do so, and can not, when the contents were not misrepresented to him, escape the obligation of the contracts by showing that he signed without reading them. *Colonial & U. S. Mortg. Co.* v. *Jeter,* 71 Ark. 185; *Upton* v. *Tribilcock,* 91 U. S. 50.

Appellees contend for an application in this case of the principle announced in *Main* v. *Dearing,* 73 Ark. 470, and like cases, that, even where a written contract for the sale of articles contains no warranty of quality, the law will imply a warranty that the articles shall be reasonably fit for the intended use. But where the written contract between the parties contains an express stipulation against warranty, none can be implied. *J. F. Hartin Commission Co.* v. *Pelt,* 76 Ark. 177.

We must, therefore, take the contract as it is written, containing the stipulation that appellant did not guaranty the machines against the use of slugs or spurious coin. Have appellees, in the face of this express agreement absolving appellant from any warranty, made sufficient showing of false representations concerning this matter to entitle them to a discharge from the obligation of the contract? We think not.

It is said that "when the vendor positively misrepresents a material fact which is peculiarly within his own knowledge and of which the purchaser is ignorant, the fact that he refuses to give a warranty is not inconsistent with his liability for fraud." 20 Cyc. p. 60, and cases cited. Whilst this is doubtless a correct statement of the law on the subject, yet it is equally true that where there is in the written contract an express stipulation against warranty the proof of such misrepresentation must be clear and satisfactory, for the practical effect

of giving relief on account of the misrepresentation is to disregard the terms of the contract. The proof in this case is not sufficient to justify us in granting the relief. Two witnesses, Mr. Dave Kempner, one of the appellees, and the bookkeeper of the firm, testify that the agent made the representation that the machines would not permit the use of anything but nickels. The agent denies it, and in support of his denial we have the stipulations in the written contracts. Moreover, it would appear to be impossible to construct a machine of this kind which would respond only to a nickel five-cent piece of money, and not to another metallic substance of substantially the same size and weight, and it seems to us unreasonable either that a selling agent should represent such a thing to be true or that a purchaser should have credited and relied upon such a statement.

Besides, one of appellee's letters to appellant concerning the matter shows beyond dispute that they did not execute the contracts upon representation that the machines would not take substances other than nickels. After the execution of the contracts, and, before appellees decided to demand a cancellation, they wrote a letter to appellant containing the following: "Please do not ship any of the Silent Shoe Lace Salesmen until we advise you further. We have a peculiar proposition to contend with here. One of the saloons has gone out of business and has left some ten or fifteen thousand trade chips, like sample which we enclose you, throughout the city."

Now, if they were relying upon the alleged representation of the agent that the new machines were improved over the old ones in use, and would not respond to anything but nickel pieces, why the necessity of asking a temporary postponement of the shipment while these worthless trade checks were in circulation? This letter shows clearly that appellees realized all the time that the new machines could not be relied on to reject everything but nickel pieces, and that they did not want to pay for the machine and expose them while the checks were in circulation.

We think the decree is not supported by the evidence in the case, and the same is reversed and remanded with directions to enter a decree in favor of appellant in accordance with the prayer of the cross-complaint for the amounts specified in the contracts, with interest.

HART, J., disqualified.