EZELL *v.* HUMPHREY.

Opinion delivered March 22, 1909.

REFORMATION OF INSTRUMENTS—PROOF OF MISTAKE.—An instrument will not be reformed on the ground of a mutual mistake unless the proof of such mistake is clear and satisfactory.

Appeal from Mississippi Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*S. S. Semmes* and *W. J. Lamb,* for appellant.

Where a deed omits terms or stipulations agreed upon or understood by the parties, or contains terms or stipulations contrary to their intention, equity will, on a proper showing of mistake or fraud, reform the instrument. 104 Ia. 423; 53 Kan. 550; 12 Ore. 363; 62 Wis. 316; 44 N. H. 440; 48 Mich. 510; 89 Ia. 686; 60 Conn. 170; 101 U. S. 577; 108 U. S. 132; 136 U. S. 387; 35 Minn. 42; 60 Ark. 306.

*J. T. Coston,* for appellee.

1. There is no contract until the minds of the parties meet. An offer to sell imposes no obligation until it is *accepted according to its terms.* A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer. 119 U. S. 151; 101 U. S. 50; 37 Fed. 560; 31 S. W. 680; 55 N. W. 1032; 43 Fed. 412; 8 S. E. 449.

2 Ignorance on Ezell's part as to the time when the lien for the drainage tax would attach is no defense. 2 Pomeroy, Eq. Jur., § 843; 81 Am. Dec. 138; 43 N. E. 508; 12 So. 54; 60 Am. Dec. 541; 12 Peters 625; 63 Am. Dec. 363; 65 S. W. (Ark.) 1054; 60 Ga. 391; 58 Ga. 144; 31 Me. 318; 25 Fed. 366.

3. Before a deed will be reformed, the proof must be clear and satisfactory that there was fraud in the preparation or execution thereof, or mutual mistake or accident by reason of which it failed to express the agreement intended. 77 S. W. (Ark.) 53; 105 S. W. (Ark.) 881; 96 S .W. (Ark.) 383; 102 S. W. (Ark.) 1112; 98 S. W. (Ark.) 701.

McCULLOCH, C. J. The defendant, Ezell, who is appellant here, owned two sections of land in Mississippi County (secs. 31 and 32, T. 14 N., R. 10 E.), and on December 14, 1903, sold and, by deed containing full covenants of warranty of title and against incumbrances, conveyed them to the plaintiffs, Humphreys & Simonson. The conveyance also embraced a lot in the town of Luxora, Ark., and contained a reservation of title to the timber on the land. The land at the time of the conveyance was incumbered with special assessments, amounting to about $1100, for the drainage of the land, and constituted a lien thereon. Subsequent to the conveyance, the lien of these assessments was enforced against the land, and the plaintiffs were compelled to pay the same in order to protect the land from foreclosure sale. The plaintiffs then instituted this action at law to recover from defendant the amount paid out by them to remove the incumbrance. Defendant filed his answer and cross-complaint, alleging in substance that it had been understood and agreed that the plaintiffs should pay these assessments, but that the stipulation to that effect was by mistake omitted from the deed. The prayer of his cross-complaint is that the deed should be reformed so as to correctly express the true agreement of the parties thereto. The

cause was removed to the chancery court, and on hearing thereof the chancellor dismissed the cross-complaint for want of equity, and rendered a decree in favor of the plaintiffs for the recovery of the amount paid out by them in removing the incumbrance. Defendant appealed to this court.

The negotiations between the parties leading up to the conveyance of the land were entirely by correspondence, except the verbal negotiations preceding it, to which no importance is attached, and which tends in no degree to settle the point at issue. The verbal negotiation was had in September, 1903, and the correspondence began on October 6, 1903, by a letter from the defendant, written from his home in Spartanburg, S. C., to plaintiff Simonson, with whom all the negotiations were had. This letter, after referring to other matters pending between the parties, contained the following statement, which is relied on as fixing the substance of the agreement: "I intended also to talk with you further about the sale of sections 31 and 32. If you wish to submit an offer on these two sections to your associates at $10 per acre you may do so, subject of course to the timber contract which is on them with Moore & McFerrin and the ditch tax when due." The letter also contained a further statement with reference to the reservation of timber: "In case of a sale to you, I would have to reserve the timber on the strip of new land which I ought to get on the west side to offset that cut off on the east side."

Simonson replied to this by letter dated October 12, 1903, which, after referring to the other matters, contained the following: "Will say, I appreciate your proposition of $10 per acre for your sections 31 and 32 in 14-10; but that is a big lot of money to put into lands that are in the condition that lots of this land is in. I think my proposition of $11,200 for these two sections was very liberal on my part, and exceedingly profitable to you in case of acceptance. There are several points upon which I will need information before being in shape to proceed rightly; that is, the amount per acre or in total of the drainage tax upon this land, and the time of the expiration of the timber contract with Moore & McFerrin, or more definitely yet, perhaps, the time you could give us a warranty deed with full possession. In case this latter feature in particular was satisfactory, I will say I

would recommend to my people the purchase of these two sections at twelve thousand dollars, including the timber mentioned. In case of a sale we would pay all cash, or, if terms as to interest were satisfactory, would pay cash as you desired and balance later as you wished, though not less than two or three years, as we would prefer to pay cash rather than make terms for a shorter time. Will say by the time we pay the drainage tax and make any improvement toward constructing laterals to get the water off, we would have more than $14,000 in the land right away."

Defendant replied to this letter on October 17, 1903, stating the amount of the drainage assessments as he understood it to be. On October 24, 1903, Simpson wrote defendant a letter containing a statement to the effect that he would recommend to his partner "the purchase according to price and conditions named in my last letter," referring to the letter of October 12th. Defendant replied to this on October 30th, stating that he had decided to let them have the land for the $12,000 offered, but adding that he would reserve the uncut timber sold to Moore & McFerrin, and a strip of timber on the west side of section 31.

Simonson wrote on November 11th, calling attention to the fact that his proposition included the strip of timber on the west side of section 31, and declining to allow a reservation as to that. Defendant wrote on November 16th, insisting that if the trade was made he would reserve the strip of timber mentioned in former letters, and declining to make the trade otherwise. On November 28th, Simonson wrote, stating positively that, unless the strip of timber was included in the trade, negotiations were at an end, but added a proposition that he and his associates would give $5,000 for section 32. Defendant replied to this on December 1st, declining to accept $5,000 for section 32, but offering to accept $6,000 for it. On December 9, 1903, Simonson wrote defendant, and stated in substance that he had been unable to consult his associate with reference to reserving the strip of timber in question from the trade, and added the following proposition, which was immediately accepted by defendant by telegraphic despatch: "In order to further this matter and make it possible for us to go ahead and close this deal, will say I will take the responsibility of closing it at the price of $12,000 without consulting the Judge further, on conditions that you reserve this

strip of timber of 16 inches and up for a term of three years on west side of sec. 31, and in its place include the piece of vacant property in Luxora which we looked at and discussed when you were here." Defendant immediately replied by wire, accepting the proposition, and also followed it by letter, dated December 14th, accepting the proposition and stating that he had forwarded the deed and abstract of title to the bank at Luxora.

The deed, instead of containing a reservation of timber 16 inches and upward on the strip on the west side of section 31, reserved the timber 15 inches and upward; but, notwithstanding this variance from the proposition made by plaintiffs in the letter of December 9th, they accepted the conveyance and paid the purchase price. The deed of conveyance constituted the last expression of the agreement between the parties, and superseded all antecedent negotiations, either written or oral. The deed contained full covenants of warranty, which rendered the defendant liable for the amount of the incumbrance on the property. The only question in the case is whether or not the defendant has adduced proof sufficient to warrant the court in finding that the deed does not truly reflect the agreement of the parties, and that a mutual mistake was made in its preparation, execution and acceptance.

This court has repeatedly held that in order to justify the reformation of a written instrument, the proof must be clear and satisfactory. *McGuigan* v. *Gaines,* 71 Ark. 614.; *Goerke* v. *Rodgers,* 75 Ark. 72; *Mitchell Mfg. Co.* v. *Kempner,* 84 Ark. 349.

The correspondence between the parties tends to show that the defendant had in mind that his various propositions to the plaintiffs and his acceptance of their final proposition to him were on the basis that they should pay the drainage assessments. This is doubtless due to the fact that he believed that the assessments did not constitue a lien on the land, but that they would thereafter become a lien when the drains were cut. The final propositions made by the plaintiffs, in the letter of December 9, 1903, contained a distinct proposition to pay a specified amount for the land. This proposition was accepted, and the acceptance was followed up by a deed, prepared by defendant himself, omitting all mention of the drainage assessments and expressly warranting the title against incumbrances. Plaintiff Simonson tes-

tifies that he knew at the time of the conveyance that the drainage assessments constituted liens on the land, and that he did not understand, and did not intend, that they should assume the removal of those incumbrances. The burden is on the defendant to show by clear and satisfactory evidence that the deed itself was not prepared in accordance with the agreement of the parties. This omission is not sustained by the proof. There was no agreement until the defendant accepted the proposition contained in plaintiff's letter of December 9th, and the deed correctly reflected that agreement except the change as to the size of the timber which was incorporated into the deed by the defendant himself. Even conceding that the correspondence left the matter in doubt as to who should pay the assessments, it was the duty of the defendant to settle that doubt by an unequivocal stipulation in the deed itself; the burden being on him, in order to establish his right to a reformation of the deed, to show an agreement in the correspondence on the part of the plaintiffs to pay the drainage assessments, and that that agreement was by mutual mistake omitted from the deed.

The decree of the chancellor is correct, and it is therefore affirmed.