HAYES v. GAMMON.

Opinion delivered June 8, 1925.

1. PRINCIPAL AND AGENT—EVIDENCE OF AGENCY.—Evidence *held* to sustain finding of agency.

2. SALES—MISREPRESENTATION AS DEFENSE.—A stipulation against warranties in a contract of sale does not estop the purchaser or the indorser of their notes, given in consideration of the sale, from setting up the defense to their validity that the contract was procured by fraudulent representations. ↵

3. APPEAL AND ERROR—ADMISSION OF EVIDENCE HARMLESS WHEN.—The admission of incompetent evidence was harmless where it tended only to prove a fact admitted by appellant.

Appeal from Crittenden Circuit Court; *G. E. Keck,* Judge; affirmed.

*R. V. Wheeler,* for appellant; *Chas. M. Bryan, Prewitt Semmes* and *Arthur G. Brode,* of counsel.

*Caraway & Isom* and *Berry, Berry & Berry,* for appellee.

SMITH, J. Appellant, T. H. Hayes, sued appellee John Gammon and Berry and S. M. Gammon, the sons of John Gammon, who composed the co-partnership of S. M. Gammon & Brothers, upon a series of notes aggregating $1,500, representing the balance alleged to be due upon the sale of a second-hand passenger bus. The sons of John Gammon who composed the firm of Gammon Brothers, were both minors, and a verdict was directed in their favor on this account, from which action of the court no appeal was taken.

The notes given by Gammon Brothers were indorsed by their father, and judgment was prayed against him as indorser. In addition, the defendant John Gammon was sued on an open account for $50, and, as no denial of this indebtedness was made, judgment was rendered therefor; but, upon a trial before a jury on the issue of liability on the notes, there was a verdict and judgment in favor of John Gammon, from which is this appeal.

Appellant was the owner of a second-hand White truck, which had been converted into a passenger bus, and was bought by Gammon Brothers to be used for that purpose. The testimony shows that Hayes requested one Rudd to negotiate a sale of the bus to the Gammon boys, and the most important question of fact in the case is whether Rudd was the agent of Hayes in selling the bus to the Gammon Brothers. These boys testified that Rudd approached them about buying the bus, and represented to them that it was only two years old, and appellee John Gammon testified that when he indorsed the purchase money notes he inquired the age of the bus and was told by Rudd that it was two years old.

Hayes denied that Rudd was his agent, and testified that Rudd had no authority to make any representations concerning the bus, and that he was not advised, until

after appellee had refused to pay the notes, that any representations in that respect had been made. Hayes did admit, however, that he had requested Rudd to speak to the Gammon boys about the bus.

Rudd testified that he did not represent either party to the trade, and that he had not been paid anything by either, and did not expect to be compensated for what he had done, but on his cross-examination he admitted that he was acting as agent for Hayes, and he admitted having stated both to the Gammon Brothers and to their father that the truck was only two years old. If it be said that the admission of Rudd that he was the agent of Hayes was a mere conclusion of the witness, it may be said that this question was submitted to the jury under instructions which are not complained of, and that the testimony warranted the statement by Rudd that he was the agent of Hayes and supported the finding by the jury that such was the fact.

It is undisputed that Hayes requested Rudd to speak to the Gammon boys about buying the bus, and it is likewise undisputed that Rudd negotiated the sale, that he got in touch with the boys and brought them to Hayes' place of business, where the bus was shown them. A written contract of sale was prepared, and its execution by Gammon Brothers was procured by Rudd, and later the endorsement of appellee John Gammon was secured by Rudd, who received both the contract and the indorsed notes and delivered them to Hayes.

Gammon and his sons testified that they traded with Rudd as the agent of Hayes, and that they relied upon the representation of Rudd as to the age of the bus, and the boys testified that they were induced by this representation to buy the bus, and appellee John Gammon testified that this representation induced him to endorse the notes.

It is insisted that this testimony was erroneous, as it permitted the jury to find that an agency existed from the proof of the acts and declarations of the alleged agent.

We think, however, that this testimony was competent, and that, taken in connection with Rudd's own testimony and other testimony showing both Rudd's apparent and actual authority, the jury was warranted in finding that Rudd was, in fact, the agent of Hayes in negotiating the sale.

The contract of sale was signed by the Gammon Brothers and contained the recital that "the property is transferred in its present condition, and no warranties, guaranties or covenants as to its condition are made, and the said party of the second part accepts it as it is."

It is insisted that in view of this recital appellee is estopped from questioning the validity of the consideration for the notes which he signed as indorser. This is not, however, a suit for a breach of warranty. On the contrary, appellee is defending upon the ground that the execution of the contract was induced by a false and fraudulent representation in regard to the age of the car. Of course, an old car might have been in good condition, or a new car might have been in bad condition, but appellee is not defending on the ground that there was any breach of warranty in regard to the condition of the bus. His defense is that he was induced to buy an old truck which he would not have bought but for the false and fraudulent statement concerning its age, which induced its purchase.

In the case of *Mitchell Mfg. Co.* v. *Kempner*, 84 Ark. 349, the purchaser of a patented machine sought to have stricken from the written contract of sale a recital that it was not warranted in certain respects, it being insisted by the purchaser that a warranty had been made. The relief prayed was denied on the ground that the purchaser had signed a contract and did not contend that the execution of the contract itself was procured by the use of any false or fraudulent representation. But it was there said: "It is said that 'when the vendor positively misrepresents a material fact which is peculiarly within his own knowledge and of which the purchaser is ignorant, the fact that he refuses to give a warranty is not

inconsistent with his liability for fraud.' 20 Cyc. p. 60, and cases cited. While this is doubtless a correct statement of the law on the subject, yet it is equally true that where there is in the written contract an express stipulation against warranty the proof of such misrepresentation must be clear and satisfactory, for the practical effect of giving relief on account of the misrepresentation is to disregard the terms of the contract. The proof in this case is not sufficient to justify us in granting the relief.''

Here it is not contended that there was any breach of a warranty, but that the execution of the contract itself was procured through a false and fraudulent representation concerning a material fact—that of the age of the car—upon which the purchasers relied and had the right to rely. Appellee John Gammon testified that he asked Rudd the age of the bus and was told it was two years old, and that he believed this representation and relied upon it and would not have indorsed the notes had he known the statement was not true.

It was not error, therefore, to submit to the jury the question whether the execution of the contract had been procured through fraud. *Joe Lyons Machinery Co.* v. *Wiegel, ante* p. 572.

The contract of sale required the purchaser to insure the bus for the benefit of appellant, and an application for insurance was made to a local fire insurance agent, who issued the policy as requested, but when his report to the insurance company was made showing the number of the engine of the bus, the company directed that the policy be canceled on account of the age of the bus. The admission of this testimony is assigned as error.

Error is also assigned in admitting the testimony of C. A. Farris. This witness testified that there was prepared and in use for automobile dealers a ''Red Book,'' known as the National Used Car Report, which was intended to advise dealers the age of any particular car which they take in exchange or otherwise acquire. This book did not show the age of any car back of 1917, but

from that date down gave the serial numbers of all cars for each year, and by reference to this book one could tell immediately the year in which any car of standard make was made. Farris testified that the number of the bus in question indicated that it had been made prior to 1917.

If this testimony, and that of the insurance agent, is incompetent as hearsay, as contended by appellant—a point we do not decide—the admission of the testimony was harmless, as appellant admitted that the bus was an old one, and he testified that he would not have sold it at the price he did but for that fact, and by his admission the car was at least as old as a 1917 model of the White trucks, and the testimony objected to only tended to prove a fact which was admitted by appellant. Another witness, whose testimony was undisputed, testified that he knew the truck which had been converted into a bus in 1914, and, as we understand the testimony of this witness, it was an old truck then.

The testimony on the part of appellee is that a return of the bus was tendered, that it required constant repair, and was practically worthless, and we think, upon the whole case, the jury was warranted in finding that the execution of the contract of sale was procured by a false and fraudulent representation of a material fact, and that the consideration for the notes sued on had failed.

Upon a consideration of the whole case we find no error, and the judgment of the court below is affirmed.