James S. SCOTT, d/b/a Scott Lumber Company, Appellant,

v.

Cornelias VUURENS et al., Appellees.

No. 5-3006.

Supreme Court of Arkansas.

May 27, 1963.

Digby & Tanner, N. Little Rock, for appellant.

James L. Sloan and Wright, Lindsey, Jennings, Lester & Shults, Little Rock, for appellees.

JOHNSON, Justice.

This is a suit to foreclose a materialman's lien. Appellant James S. Scott, doing business as Scott Lumber Company, filed suit in Pulaski Chancery Court on May 18, 1962, against appellees, Cornelias Vuurens and Violet K. Vuurens, his wife, Weston R. Coon and Ruth L. Coon, his wife, and Republic Investment Company of Arkansas, seeking judgment for $5,234.46 against Vuurens and in rem against real property now owned by the Coons and mortgaged to Republic Investment Company, for materials furnished between September 7, 1961 and May 7, 1962, for construction of a house at 3624 Central Street in Little Rock. When building was commenced, Vuurens owned the property and had obtained a construction money mortgage for $7500.00 from Republic on August 28, 1961. In March when the house was near completion, it was sold to the Coons who executed a mortgage to Republic for $12,100.00, who in turn released Vurrens' construction money mortgage. Appellant sought to have his judgment (when obtained) be declared paramount to the Coons' and Republic's interests in the property, and prayed that the property be sold if the judgment be not satisfied within a fixed time. The Vuurens answered with a general denial and alleged affirmatively that the debt sued on had been fully paid and extinguished. The Coons filed a general denial, and Republic Investment Company admitted the two mortgages, and alleged that the release and satisfaction of the former mortgage was invalid because of failure of consideration and misrepre-

sentations on the part of Vuurens and prayed that the release of the August 28, 1961 construction money mortgage be set aside and that mortgage be reinstated.

Vuurens then filed a counterclaim against appellant alleging that he (Vuurens) conveyed certain other property in which he owned an interest to appellant in full satisfaction of the debt, and that, if the court should sustain appellant's complaint, then that conveyance should be cancelled.

On October 29, 1962, the Chancellor entered a decree finding that the debt of Vuurens had been fully paid and extinguished, dismissed the complaint with costs taxed against appellant, and dismissed the counterclaim as moot. From that decree comes this appeal.

The principal question involved is whether the parties (appellant and Vuurens) intended that the conveyance of the interest of Vuurens in the other property to appellant be in complete satisfaction of the debt here sued on.

Appellant and Vuurens had been doing business together for three or four years, Vuurens having built 12 houses and appellant furnishing much of the material. At the time Vuurens started to build the Central Street house, he owed appellant a considerable amount of money for materials furnished to other jobs on which the lien time had run. On November 9, 1961, Vuurens paid appellant $1,715.44, and on December 15, 1961, $750.00, which reduced Vuuren's total indebtedness to appellant to approximately $10,000.00. The part of the total indebtedness sued for here for materials and advances furnished for the construction of the Central Street house is $5,234.46.

Vuurens had purchased ten acres of property in southwest Little Rock from Robert Lowe for the sum of $19,000.00, payable $60 a month, on which he still owed about $7,000.00. Since purchasing the Lowe property, Vuurens had improved and sold two front lots which faced on a highway,

leaving about 8¼ acres in the tract. Vuurens became three months in arrears in his payments to Lowe, and Lowe elected to accelerate the debt and filed suit in Pulaski Circuit Court on February 27, 1962, for the balance owed. An answer was not filed on behalf of Vuurens, however Lowe's attorney testified that he advised Vuurens' attorney it would not be necessary to file an answer if the arrears were paid to date. Lowe's attorney was later advised by Vuurens' attorney that appellant might pay the arrearage and assume the obligation. On April 20, 1962, Lowe and his attorney went to appellant's office where appellant exhibited a quitclaim deed from Vuurens and his wife and stated that he and Mr. Vuurens had worked out an arrangement whereby he (appellant) was to make an assumption of this obligation. Appellant thereafter paid the arrears, attorneys fee and court costs and assumed the obligation.

There is no dispute about the amount that Vuurens had purchased from appellant, or the amount he paid appellant, and that Vuurens and his wife conveyed the Lowe property to appellant. Virtually all other testimony appears to be disputed.

The value of Vuurens' equity in the Lowe property is disputed—the testimony ranged from $1,000 (appellant's testimony) to around $10,000 (Vurrens' testimony). Expert witnesses for both appellant and appellee testified as to the value of the property in acreage. This 8¼ acres was located adjacent to a new subdivision (Twin Lakes). One of appellant's experts testified on cross-examination that there would be between 3 and 3½ lots per acre involved in this property and that he knew that two lots were sold on this property (out of the original 10 acres) where the F.H.A. permitted $1,500.00 per lot evaluation.

Vuurens testified that he conveyed the Lowe property to appellant in satisfaction of his entire account, including the account here sued on, and also testified that after the conveyance he received no further statements of account from appellant. Appel-

lant testified that Vuurens told him he had lost the property because his attorney hadn't answered the suit and that the only consideration for the quitclaim deed was his (appellant's) paying the arrearage, court costs and attorneys fee and assuming the balance of the obligation. However, in appellant's deposition taken prior to trial, it was shown that appellant testified in eight different places that he had paid Vuurens a $100.00 consideration mentioned in the deed. Appellant therein stated that he paid the $100.00 "by cash"; that the record "wouldn't show up in my company books"; that he "just paid him" and "without receipt"; that the $100.00 was the only consideration; that he told Vuurens the $100.00 was all that he was to get; that he paid Vuurens the $100.00 when the deed was delivered to him at the appellant's store; and that the phrase "$100.00 and other valuable considerations sounds like a legal term to me." Yet at trial the testimony was that it "gradually came back to him that he had not paid Vuurens $100.00." Appellees argue in effect, and we agree, that it would be inconsistent for appellant to maintain that he paid Vuurens $100.00 and at the same time contend that Vuurens owed him over $10,000.00 on several accounts.

Appellant testified that since Vuurens did not direct him where to apply the November and December payments, he applied them against Vuurens' old accounts. The escrow agent for the National Abstract Company (handling disbursement of the construction money) testified that she called appellant just after each of the payments to be sure that the payments were credited against the account on the Central Street house. She also testified that prior to but while in the process of closing the Coon loan, she called appellant to be sure Vuurens was paid up, and that appellant advised her that his account was "closed in full." Appellant while admitting the telephone conversation with the escrow agent vigorously disputed the contents thereof. The record reveals that approximately two months

elapsed between this conversation and the filing of the present law suit. In the meantime, on April 20, 1962 the quitclaim deed to appellant was executed.

Testimony on other material points is similarly conflicting. This court stated in Dearien v. Lancaster, 221 Ark. 98, 252 S.W.2d 72, "With the testimony about evenly balanced we are not in a position to say that the chancellor's conclusions [were] wrong. The vital issue was that of credibility, and his opportunity to decide that question was immeasurably better than ours." We have examined the record and testimony closely, and on trial de novo we cannot say that the chancellor's findings are against the preponderance of the evidence.

Affirmed.