E. E. MITCHELL, Jr., Appellant,

v.

William M. MITCHELL, Appellee.

No. 5–2946.

Supreme Court of Arkansas.

June 3, 1963.

Phillip H. Loh, Morrilton, for appellant.

Felver A. Rowell, Jr., Morrilton, for appellee.

JOHNSON, Justice.

Appellant E. E. Mitchell, Jr., filed a petition for a declaratory judgment in Conway Chancery Court, seeking to regain possession of certain farm lands being managed by appellee William M. Mitchell and to recover certain payments made to the Federal Land Bank by appellant.

The parties are two of the four sons of E. E. Mitchell who died in 1942 leaving real property in trust for ten years, then to vest in the sons for life with the remainder in the sons' bodily heirs. (This court upheld the validity of the will in Mitchell v. Mitchell, 208 Ark. 478, 187 S.W.2d 163.) When the trust terminated in 1952, the four brothers entered into an agreement entitled "Partition and Trust Agreement" which divided up their interest in the real property (life estate) among the four. Part of the property so partitioned was Paw Paw Bend farm. Appellee received the south half, appellant the north half. Paragraph 10 of the partition agreement attempted to provide that the entire farm was to be operated as a unit for the lifetime of appellee. Since 1952 appellee has managed the farm as a unit, collected and paid over to appellant all the rents from his lands after deducting taxes and certain mortgage payments. At the time the agreement was made there was a Federal Land Bank mortgage outstanding on the entire farm, and when appellee started managing the farm he gratuitously applied approximately $3,000

from certain insurance proceeds toward reduction of the mortgage, which took care of the land bank payments for approximately two years. Thereafter appellee either deducted one-half of the mortgage payment from appellant's rental income before remitting to appellant, or else requested a check from appellant, for half of the annual payment. Appellant contends that he was induced to enter into a verbal operating agreement with appellee in consideration of appellee's paying appellant 50% of the annual crop rents on the entire farm and appellee's assuming the payments on the Federal Land Bank loan. Appellee contends that appellant was to receive only the farm rents from appellant's land and that after appellee's initial $3,000 payment, the parties were to be jointly responsible for the mortgage payments.

Appellant further contends, *inter alia,* that paragraph 10 of the partition agreement is inconsistent with paragraph 9, which provides that each life tenant may have exclusive control of his interest in the lands to the exclusion of the others, and that paragraph 10 is therefore null and void, and that he is entitled to possession of his land as well as reimbursement for the Federal Land Bank payments charged to him. Appellee answered, *inter alia* denying that appellant was entitled to reimbursement or return of the land. Appellee filed an amended answer which was in the nature of a counterclaim.

At trial on July 25, 1962, the chancellor found that appellant was entitled to possession of his lands, which should be delivered to him after the crop year of 1962; that appellant was not entitled to recover any sums paid or charged to appellant for Federal Land Bank payments; that appellee was not entitled to recover on his counterclaim; and that appellee was not liable to appellant for any rents or profits from either lands belonging to appellant or appellee. Appellant has appealed from this decree urging that the court erred in refusing to grant appellant judgment for all land bank payments charged to him by appellee.

Appellee has cross-appealed and argues two points for reversal: (1) the court erred in holding that paragraph 10 of the Partition and Trust Agreement did not bind appellant to the operation of the Paw Paw Bend farm as a unit for the lifetime of appellee; and (2) the court erred in holding that if appellant was entitled to rescind paragraph 10 of the Partition and Trust Agreement, he was not entitled to receive the benefits of the improvements made by appellee in reliance thereon.

We shall consider first the land bank payments. Appellee testified that he charged appellant with one-half of the payments in the years 1952, and 1955 through 1961, and that appellant had expressed no dissatisfaction with their operating agreement until a representative of Winthrop Rockefeller offered to rent appellant's land for a good cash rental. Appellant testified that he made 50% of the land bank payment because, "I had no choice in the matter. I'm fifty miles away from here and he's practically on top of it and all I could do was take his figures on it." The evidence reflected that frequently appellee deducted the land bank payment from the crop rents before remitting to appellant. At times, however, appellant mailed his check for half of the payment to appellee, as shown by two letter exhibits:

"May 3, 1956. Dear Emmett [appellant]: Received notice from the Land Bank for farm payment due the 1st of June. Your one-half is $300.00 and please send me a check for this amount by the first of the month. * * * Come to see us when it is convenient."

"Little Rock, Nov. 22, 1957. Dear Bill [appellee]: Thanks for the rent check and I am enclosing check in the amount of $305.80 on loan payment. Drop by when you are down here around the Marion and we will have a coffee here."

It is clear that appellant's action in voluntarily making the payment as reflected by his letter spoke louder than words to the

chancellor, and the court's finding that appellant was not entitled to refund of sums paid by him or charged to him for land bank payments is not against the preponderance of the evidence. See Scott v. Vuurens, Ark., 368 S.W.2d 80.

For reversal on cross-appeal, appellee contends that the trial court erred in holding that paragraph 10 of the Partition and Trust Agreement did not bind appellant to the operation of the Paw Paw Bend farm as a unit for the lifetime of appellee.

The partition and trust agreement was entered into by the four Mitchell brothers in 1952, apparently to avoid future contention among them, and allots each brother certain real property for life. In the preamble to the agreement it is stated:

"WHEREAS, except as to said personal property and certain unreserved land, the said James C. Mitchell, Shelby H. Mitchell, William M. Mitchell and E. E. Mitchell, Jr., desire that possession of such entailed lands be partitioned among them, *to the end that each life tenant may take exclusive possession of his interest therein,* * * *" [Our emphasis.]

Paragraph 7 provides for the exchange of quitclaim deeds, to implement the partition. Paragraph 9 reads as follows:

"This agreement is executed for the sole and only purpose as hereinabove set forth, *to the end that each life tenant may have individual control of his interest in the lands of the estate, to the exclusion of the others, and anything to the contrary herein contained notwithstanding,* this agreement shall not be construed as an attempt on the part of the said life tenants to sell, convey or otherwise alienate any expectancy in the estate of E. E. Mitchell, deceased, in contravention of any condition of said will." [Our emphasis.]

The last clause paragraph 10, without reciting additional consideration, purports to contain an agreement between appellant and appellee to the exclusion of the other parties to the contract. In paragraph 10, despite the strong language stating the exclusive purpose of the contract, two of the four parties to the agreement attempted to agree between themselves that the terms of the partition agreement would not be applicable to them as regards their property; that as a result of such attempted agreement, their shares were to be considered as one during the lifetime of appellee.

It is familiar law that construction of a contract which entirely neutralizes one provision should not be adopted if the contract can be construed to give effect to all the provisions. Fowler v. Unionaid Life Ins. Co., 180 Ark. 140, 20 S.W.2d 611. Here, however, the whole purpose of the partition agreement was "to the end that each life tenant may take exclusive possession of his interest therein." This cannot be reconciled with an attempted agreement in the same instrument to the contrary and brings into motion the rule that a subsequent clause irreconcilable with a former clause and repugnant to the general purpose and intent may be disregarded. 12 Am. Jur., Contracts, § 243. The chancellor did not err in so holding.

Appellee's second point urged for reversal on cross-appeal is that the trial court erred in holding that if appellant was entitled to rescind paragraph 10 of the partition and trust agreement, he was not entitled to receive the benefits of the improvements made by the appellee in reliance thereon.

The specific relief sought by this point seems to be urged here for the first time. Little Rock Ry. & Electric Co. v. North Little Rock, 76 Ark. 48, 88 S.W. 826, 1026. It is true that in appellee's amended answer he alleged that he had expended approximately $8,000.00 since 1952 for road building, drainage, levee repair and flood control. However, appellee's prayer, which was in the nature of a counterclaim, was as fol-

lows: "[A]nd the defendant [appellee] prays that if in the accountings it is found that said defendant has not operated said farm in good manner that he be given credit on any sums owed to the defendant for this $8,000.00 improvements." There has been no finding that appellee has not operated the farm in a good manner. It is admitted that during the entire time of appellee's management of the property, even though he was from time to time in possession of rent money belonging to appellant, appellee never attempted to charge appellant with any part of these alleged improvements. The proof on these improvements is rather vague and raises some question as to their value to appellant. On this point, we are unwilling on trial de novo to say that the learned chancellor's finding that appellee was not entitled to recover on his counterclaim was against the preponderance of the evidence. See Dearien v. Lancaster, 221 Ark. 98, 252 S.W. 2d 72.

Affirmed on appeal and cross-appeal.