Elizabeth PACLAWSKI and Walter Paclawski, Plaintiffs in Error,

v.

BRISTOL LABORATORIES, INC., Bristol Laboratories, Division of Bristol Meyers Co., Bristol Meyers Company, and John Null, Defendants in Error.

No. 40921.

Supreme Court of Oklahoma.

Jan. 24, 1967.

Rehearing Denied March 28, 1967.

Rucker, Tabor, Shepherd & Palmer, Truman B. Rucker, O. H. "Pat" O'Neal, Tulsa, for plaintiffs in error.

Hudson, Hudson, Wheaton, Kyle & Brett, Tulsa, for defendants in error.

PER CURIAM:

In separate actions, Walter Paclawski and his wife, Elizabeth Paclawski, sued the defendant drug company and its salesman, John Null, for damages resulting from the use by Mrs. Paclawski of a medical preparation called "Kantrex" in 1958. It was alleged that the drug was prescribed and administered by Dr. Downs of the Cooper Clinic in Fort Smith, Arkansas, and that it was developed and placed on the market by the defendant drug company. The codefendant, John Null, is a resident of Tulsa County, Oklahoma, and no questions as to venue are raised in the briefs. After the issues were made up by petitions, answers and replies, defendants filed motions for judgment on the pleadings. Since the pleadings were substantially the same in both cases with the exception of the particular items of damage alleged, the cases were consolidated for purposes of the hearing of the motions for judgment on the pleadings. The motions were sustained and judgments for defendants were entered. Plaintiffs appeal.

In the answers, defendants pleaded, among other things, that the plaintiffs had " * * fully released and discharged Ralph A. Downs, the Cooper Clinic, and this defendant, on account of all claims which (they) might have, or have in the future". A copy of the release was attached as an exhibit.

In the replies, plaintiffs admitted the execution of the release, but denied that it was their intention thereby to release anyone except Downs and the Cooper Clinic. They attached two letters written by the Fort Smith attorney who procured the release as counsel for the insurance carrier for Dr. Downs and the Cooper Clinic, and a "Memo" from that attorney to the Fort Smith attorney representing the plaintiffs, dated the same day as the release. In this connection, no charge of fraud or bad faith is leveled against the attorney who procured the release.

It should be noted at this point, and kept in mind, that the "Uniform Contribution Among Joint Tort Feasors Act" has been enacted in Arkansas and was in force there at all times pertinent to this action. This act reverses the common law rule against contribution among joint tort feasors and makes the allocation of the pro rata share of the damages as among joint tort feasors a jury question, although all tort feasors remain jointly and severally liable for the total amount of the damages insofar as the injured party is concerned. The Arkansas statute provides, among other things, that a release of one joint tort feasor does not relieve him from liability to make contribution to another joint tort feasor unless the release " * * * provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors". Arkansas Statutes 1947 Annotated, Section 34-1005.

It is agreed by the parties that the construction and interpretation of the release is controlled by the laws of Arkansas, where the plaintiffs live and where the contract was executed and performed. See

16 Am.Jur.2d, Conflict of Laws, Sec. 39, Aetna Casualty and Surety Co. of Hartford v. Gentry, 191 Okl. 659, 132 P.2d 326, 145 A.L.R. 623; 15 O.S.1961, Sec. 162.

The first paragraph of the release is as follows:

"That we, Walter Paclawski and Mrs. Walter Paclawski, of Sebastian County, Arkansas, Fort Smith District, being of lawful age, for the sole consideration of $3,750.00 to us in hand paid by R. A. DOWNS and/or COOPER CLINIC, receipt of which is hereby acknowledged, do hereby for ourselves, our heirs, executors, administrators and assigns, release and forever discharge the said R. A. DOWNS and COOPER CLINIC, their agents, servants, heirs, executors, administrators *and all other persons, firms or corporations* from or on account of all claims, actions, causes of action, demands, rights, damages, expense and compensation whatsoever for and on account of anything done, suffered or (permitted) to be done to and including the date hereof, and particularly for and on account of any known and unknown, foreseen and unforeseen, personal and bodily injuries and the consequences thereof, including loss of consortium resulting and to result from and on account of any consultation or treatment performed at the hands of said R. A. DOWNS and/or COOPER CLINIC during the year(s) 1958 and 1959." (Emphasis supplied)

The fifth paragraph is as follows:

"It is further agreed and understood that *in the event other parties are responsible to us for damages* as a result of this accident and/or episode or incident, the execution of this agreement shall operate as a satisfaction of *our claim against such other parties* to the extent of the pro rata share of the said R. A. DOWNS and COOPER CLINIC herein released." (Emphasis supplied)

The other parts of the release may be said to be "standard" provisions, and it is not argued that they shed any light on the question presented for the determination of the court by the motions for judgment on the pleadings.

It is agreed that the sole question presented on appeal is whether, as a matter of law, defendants have been released from liability.

It is the position of plaintiffs that the release shows on its face the intent not to release anyone except Downs and the Cooper Clinic.

Defendants argue, among other things, that the release shows by "clear and unambiguous language" that the defendants were released from liability. Nevertheless, in the brief they recognize that there is an apparent conflict between the first and fifth paragraphs above quoted, arising because of the language we have emphasized. While the phrase "all other persons, firms or corporations" in the first paragraph would seem to include defendants in the release, the references in the fifth paragraph to "the event other parties are responsible to us for damages" and "our claim against such other parties" are clearly repugnant to such a construction. Regarding this conflict, defendants say in their brief "When two clauses appear in a contract that are repugnant, rules of construction require that the first clause be given effect and the latter rejected", citing Fairbanks, Morse & Co. v. Miller, 80 Okl. 265, 195 P. 1083.

This rule, called the "rule of priority of clauses", has been criticized as arbitrary and artificial, and it is said to be a rule of last resort to be applied only where no other acceptable means of disposing of the repugnant clauses can be found. 17 Am.Jur.2d Contracts, Sec. 267; 17A C.J.S. Contracts § 309. The Oklahoma Statutes on Interpretation of Contracts, 15 O.S.1961, Section 151 et seq., make no reference to the rule of priority. See especially sections 166 and 168.

An examination of the Fairbanks case above cited raises considerable doubt as to whether the rule was actually applied there. In that case, in the ninth paragraph of the syllabus, the Oklahoma court stated a rule

similar to that contended for by defendants here, but was careful to add the qualifying phrase " * * * and repugnant to the general purpose and intent of the contract * * *". A study of the opinion justifies the conclusion that the decision was in reality based on other sounder and well established rules for the construction of contracts. At page 1091 of the Pacific Reporter, the court said:

"If one construction would make a contract unreasonable while another would do justice to both parties, the latter will be adopted. Every part of a contract must be taken to have been used for a purpose, and each provision must be considered in connection with others, and if possible effect given to all. The courts will look to the written instrument, and if possible give such construction as will give some effect to each part of the contract * * *."

The same may be said of Mitchell v. Mitchell, 236 Ark. 812, 368 S.W.2d 284, an Arkansas case which is cited in support of the rule of priority. In that case the Arkansas court found the subsequent clause to be irreconcilable with the prior one and *repugnant to the general purpose and intent* of the contract.

In Holland v. National Automotive Fibres, 22 Del. ch. 99, 194 A. 124, the Delaware court said that the application of the rule of priority of clauses "has no more assurance of arriving at truth than would the flip of a coin".

■ In Williston on Contracts, Revised Edition 1936, Vol. 3, Par. 624, it is said concerning this rule:

" * * * It is obvious, however that such a rule is extremely artificial, and can only be accepted as a last resort. In most recent cases where it has been applied the later clause was inconsistent with the general purpose of the contract, and for this reason alone might have been disregarded. If, however, the first clause is general in terms, and, the latter is particular, or *if the latter clause is repugnant only to a part of the earlier, it*

*seems that the latter clause would be given full effect, and the earlier subjected to such qualifications as the latter might make necessary."* (Emphasis supplied.)

Substantially the same language is contained in the 1961 edition of this same work. .

Construing the release now before us "within its four corners", we find it unnecessary to resort to the arbitrary and artificial rule of priority of clauses, and we think the solution to the problem is to be found in the emphasized matter in the quotation from Williston on Contracts above.

From the face of the release, and construing it as a whole, it is apparent that (1) the contracting parties were Downs and the Cooper Clinic, on the one hand, and Mr. and Mrs. Paclawski on the other; (2) the entire consideration was paid by Downs and the Cooper Clinic, not by the defendants in this case; (3) the Paclawskis were aware of the possibility that "other parties are responsible to us in damages" and intended to preserve "our claim against such other parties"; (4) paragraph five is repugnant to a portion of paragraph one—"all other persons, firms, or corporations"; (5) under Arkansas law, paragraph five has the effect of protecting Downs and the Cooper Clinic from the possibility of later enforced contribution to their alleged joint tort feasors, defendants in this case.

We think it follows that the general purpose and intent of the contract was (1) to release only Downs and the Cooper Clinic from liability; and (2) to protect Downs and the Cooper Clinic from enforced contribution under the Uniform Contribution Among Joint Tort Feasors Act as enacted in Arkansas.

This being true, it cannot be said that paragraph five of the release is "repugnant to the general purpose and intent of the contract". Under the rule stated in the emphasized portion of the last sentence in the quotation from Williston on Contracts, paragraph five will be given full effect, and paragraph one will be "subjected to such qualifications" as paragraph five makes

necessary. The only qualifications necessary is to strike from consideration the phrase "all other persons, firms or corporations". When this is done, the general purpose and intent of the release is not violated.

Defendants say that the Arkansas courts have not construed a release such as the one now before us, and rely principally upon two cases from states having adopted the Uniform Contribution Among Joint Tort Feasors Act, Hodges v. United States Fidelity and Guaranty Company, D.C.Mun. App., 91 A.2d 473, 34 A.L.R.2d 1101, and Hasselrode v. Gnagey, 404 Pa. 549, 172 A.2d 764. In the Hodges case, a release mentioning "all other persons, firms, and corporations" was held to have released all joint tort feasors. In the Hasselrode case, the same result was reached where the release mentioned "any and all other persons, associations and corporations, whether herein named or referred to or not". However, it is quite apparent from the opinions that the releases in both cases were general in form with no language comparable to that in paragraph five of the release here under consideration, showing on the face of the release an intention to preserve claims against others. They are therefore not in point.

In defendants' brief, we are invited to give literal effect to the first paragraph, and hold that it released all tort feasors, and consider the fifth paragraph as "merely a clause, from the Uniform Act of Arkansas, to protect Dr. R. A. Downs and Cooper Clinic from further liability". However, such a construction would be illogical and unreasonable, for the obvious reason that if *all* joint tort feasors were released, Downs and the Cooper Clinic would need no protection from the possibility of enforced contribution.

■ The construction of an ambiguous contract is a question of law for the court where the ambiguity can be clarified by reference to other parts of the contract, or where the ambiguity arises by reason of the language used and not because of extrinsic facts. 17A C.J.S. Contracts § 617, page 1255; Standard Accident Insurance Co. of Detriot, Mich. v. Goldberg, 120 Okl. 108, 250 P. 892.

■ We hold that, properly construed without resort to the artificial rule of priority of clauses, the release here concerned does not constitute a release of the claim against the defendants in this case, but on the contrary effectively preserves such claim.

We have reached this conclusion after a construction of the release "within its four corners", and it is therefore unnecessary for us to consider the arguments in the briefs concerning the extrinsic evidence which the trial court conditionally received and later rejected in connection with the attachments to plaintiffs' replies.

Since it cannot be said as a matter of law that, under the pleadings in this case, plaintiffs have released their claim against defendants, the trial court's action in sustaining the motion for judgment on the pleadings was erroneous. No other reason why the trial court's action must be sustained is suggested by the record or argued in the briefs.

The judgment is vacated and the cause is remanded to the trial court with directions to overrule the motions for judgment on the pleadings and proceed in accordance with the views herein expressed.

All the Justices concur.

This Court acknowledges the services of Walt Allen, who with the aid and counsel of Owen Vaughn and Robert B. Park, as Special Masters, prepared a preliminary advisory opinion. These attorneys have been recommended by the Oklahoma Bar Association and appointed by the Court. The case was then assigned to JACKSON C. J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.