658

Charles PEACOCK, Jr. et ux *v.* Daniel C.
BRYANT et ux

CA 80-23                                    600 S.W. 2d 413

Court of Appeals of Arkansas
Opinion delivered May 21, 1980
Released for publication June 25, 1980
Rehearing denied June 25, 1980

*Joe Peacock*, for appellants.

*John C. Calhoun, Jr.,* of *Owens, McHaney & Calhoun*, for
appellees.

David Newbern, Judge. In this case an action was
brought seeking reformation of an instrument which em-
bodied a contract for the sale of farm property. The
chancellor held that the instrument was not ambiguous and
that he could find "no fraud and no mistake of a type suppor-
ting reformation." The appellant asks us to reverse, saying
the chancellor erred in his finding "the contract was not am-
biguous." While we agree with the appellant that the con-
tract was ambiguous, we affirm because the chancellor's deci-
sion that there was neither fraud nor mistake sufficient to
support reformation was not clearly erroneous. A. R. Civ. P.
52.

The appellants and the appellees entered negotiations
for the sale of the appellees' land. They had apparently
agreed on a price of $700 per acre for 805 acres. The
appellants were to assume the appellee's indebtedness to the

third parties, the Alsworths, on the land in an amount of over $220,000 leaving over $343,000 to be paid to the appellees by the appellants. The only real hurdle in the negotiations was the amount of the down payment to go to the appellees. The appellants wanted to pay $5,000, and the appellees wanted in excess of $70,000 as a down payment.

In the negotiations, which took place in 1978, the parties were apparently working with a draft contract. At least, they had before them figures showing the total price for the land at $700 per acre, and how much of the total would go to the appellees and how much to pay off the Alsworths. The appellants agreed to go as high as $15,000 for a down payment, and it was suggested, by whom we are not certain, that the appellees might accept if the appellants would, in addition to making the $15,000 down payment, make the payment which would become due from the appellees to the Alsworths on January 1, 1979. It was clear that the appellees were to remain on the land until the 1978 crops came in. The negotiations ended when the appellees agreed to accept the $15,000 down payment in exchange for the appellant's agreement to make the January 1, 1979, payment to the Alsworths.

The lawyer who had represented the appellants in the negotiations drafted the instrument and presented it to the appellees' lawyer for review. The crucial part of the instrument is as follows:

> The Buyer agrees to purchase and the Seller agrees to sell the 805 acres described above for $700.00 per acre. The total purchase price of $563,500.00. $15,000.00 of this price has been paid as an earnest money deposit, and the Seller agrees to accept and the Buyer agrees to pay an additional $20,000.00 on the date possession is relinquished by the Seller. The remaining balance of $528,500.00 shall be paid as follows: The Sellers, as of January 1, 1979, will owe to David B. Alsworth and his wife, Juanita Alsworth, the sum of $221,309.72, *plus accrued interest since January 1, 1978.* The Purchasers will assume this indebtedness in favor of David B. Alsworth and Juanita Alsworth. . . . [Emphasis added].

The appellees' lawyer asked that the italicized words, "plus accrued interest since January 1, 1978," be inserted, and they were.

The effect of this insertion was to raise the total purchase price by over $21,000, which was the amount of interest owed the Alsworths as of January 1, 1979. The figures in the instrument representing the per acre and total purchase price were not raised accordingly but were left as they had been stated at the outset of the negotiations.

The appellants insist they did not understand that by agreeing to make the January 1, 1979, payment they were agreeing to pay the interest in addition to the principal. The appellees insist that they would not have accepted the low, $15,000 down payment without this incentive which was, in effect, a farm year free of land expense in the event the appellants went through with the deal and made the January 1, 1979, payment to the Alsworths.

When it became apparent there was a misunderstanding, the appellees insisted that, if the appellants did not make the controverted payment, they would regard the $15,-000 down payment as forfeited and the contract at an end. The appellants made the principal and interest payment to the Alsworths and brought this suit to reform the instrument.

The appellants' complaint alleged there was mutual mistake in that both parties intended the appellants would only be responsible for the "principal indebtedness" to the Alsworths due January 1, 1979, rather than "the indebtedness." The instrument clearly became ambiguous with the insertion of the phrase requiring the appellants to make the 1978 interest payment to the Alsworths because, for example, it recited the per acre price of $700 which had actually become something over $721. However, there is no shred of evidence that the insertion was done by fraud or trick or otherwise inequitably. There is no doubt the appellants' lawyer who drafted the instrument knew of and apparently approved the change. Evidence presented by the appellees, including their own testimony and that of the lawyer who represented them was ample to support their conclusion they

intended that the appellants be liable for the 1978 interest and would not have made the deal otherwise.

If the appellants had brought an action in which the court would have been required to *interpret* the instrument, there might have been a closer question, but here the court was asked to *reform* it on the basis of mutual mistake. Certainly the chancellor's decision that there is no mutual mistake is supported by the testimony presented by the appellees that they were not mistaken in the least as to what was required of the appellants.

In this de novo review we do not consider ourselves bound to one theory supporting the remedy sought, but we find there was no evidence of fraud or trickery or unilateral mistake coupled with inequitable conduct by the appellees. Absent evidence of one of those occurrences, shown by clear and convincing proof, we may not reform the instrument. *Tomlinson* v. *Williams*, 210 Ark. 66, 194 S.W. 2d 197 (1946); *Mitchell Mfg. Co.* v. *Kempner*, 84 Ark. 349, 105 S.W. 880 (1907).

Affirmed.

WRIGHT, C.J., and HOWARD, J., dissent.

ERNIE E. WRIGHT, Chief Judge, dissenting. I would reverse. There is no evidence the parties discussed a final sale price of any amount other than $700.00 per acre for the 805 acres or a total sale price other than $563,500.00. These were the figures specifically set out in the contract. In detailing how the $528,500.00 balance of the contract price was to be paid the language in the contract is as follows:

The remaining balance of $528,000.00 shall be paid as follows: The Sellers, as of January 1, 1979, will owe to David B. Alsworth and his wife, Juanita Alsworth, the sum of $221,309.72, *plus accured interest since January 1, 1978.* The Purchasers will assume this indebtedness in favor of David B. Alsworth and Juanita Alsworth and by virtue of this assumption, shall be entitled to all the interest, right, and equity of the Sellers, Daniel C. Bryant

and his wife, Julia N. Bryant, under the terms of an agreement filed for record in the office of the Recorder of Deeds of White County, Arkansas, on the 19th day of December, 1974, at 12:50 p.m. This indebtedness in favor of the Alsworths in the sum of $221,309.72 carries an interest rate of 10% per annum. The remaining indebtedness of $307,190.28 shall be paid as follows: $221,309.72, the amount equal to the Alsworth indebtedness, shall carry an interest rate of 7% per annum. The balance of $85,880.56 shall carry an annual interest rate of 8 1/2%. This total amount of $307,-190.28, with the varying interest rate will be paid at $25,000.00 per year, plus accrued interest on the two separate amounts. This amount will be paid at $25,-000.00 per year plus interest for a period of 7 years. At the end of the seven year period, the balance will become due and payable in one lump sum with all interest accrued.

The clause, "plus accrued interest since January 1, 1978," was inserted in the contract at the request of the attorney for appellees, as is italicized above to aid in the understanding of the problem. After the insertion of the clause no provision was made in the subsequent language calling for crediting the accrued interest on Alsworth's mortgage debt to the deferred balance of the contract, and the language of the contract proceeds to spell out principal amounts to be paid by appellants aggregating the full amount of the deferred balance of the contract in the sum of $528,000.00 without regard to the accrued interest on the Alsworth debt, such interest being $22,120.97.

The complaint asks, "if necessary," for a reformation of the contract to add the word principal in front of the word indebtedness in the sentence following the phrase added by appellees' attorney on the ground the agreement as written contains a mutual mistake, and that it was the intent of the parties that appellants would assume only the principal debt to Alsworths leaving appellees responsible for the accrued interest.

To avoid a forfeiture appellants paid the accrued interest

on the Alsworth debt in the amount of $22,120.97, but did so under protest.

Appellants prayed for reformation of the contract and an order of the court requiring appellees to credit the contract with the $22,120.97 paid by appellants for accrued interest owed by appellees on the Alsworth contract.

The court held the contract was not ambiguous, the evidence did not establish a mutual mistake and denied reformation.

As a result of the added clause above mentioned the payment provisions call for payment by appellants of more than the clearly stated total deferred balance of the contract, the excess being the accrued Alsworth interest.

There is no evidence in the record of any discussion between the parties of an increase in the sale price of the property, although there is evidence the attorney for appellees during negotiations privately told appellees the effect of the added clause would result in their receiving more than $700.00 per acre.

This being an appeal from the judgment of the chancery court the review is de novo. It is not necessary that the contract be reformed to achieve an equitable result. It need only be construed, and as appellants seek an order requiring the contract to be credited with accrued interest payment of $22,-120.97, the petition is sufficient to warrant the granting of appropriate equitable relief.

From reading the contract as a whole it is clear the most reasonable construction as to the intent of the parties is that the language inserted was not intended to change the sale price or the amount of the deferred balance. The sale price and the deferred balance are stated with clarity and precision. The language added to the contract at the instance of counsel for appellees coupled with the following payment provisions would seem to require appellants to pay the accrued Alsworth interest in addition to the stated deferred balance of the purchase price. Such provision is irreconcilable

with the prior clearly stated sale price and the stated deferred balance. In my view reasonable persons in reading the contract would conclude the clearly stated sale price and deferred balance to express the intention of the parties, and the contract should be so construed. *Mitchell* v. *Mitchell*, 236 Ark. 812, 368 S.W. 2d 284 (1963).

The appellants have already paid the accrued interest of $22,120.97 and are entitled to credit for said amount on the last payment of principal payable under the contract.

In my view the case should be reversed with directions for such credit to be given.

HOWARD, J., joins in this dissent.